J. Everett COCHRAN and Ruby Ellen Cochran, Plaintiffs-Appellants,

v.

Richard D. GREBE and Nellie R. Grebe, Defendants-Respondents.

No. KCD 30129.

Missouri Court of Appeals, Western District.

Feb. 26, 1979.

Gordon N. Myerson, John A. Koepke, Morris, Larson, King, Stamper & Bold, Kansas City, for plaintiffs-appellants.

Bernard W. Gorman, Tarkio, for defendants-respondents.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Claiming termination by them of a contract for sale of land because of defendants' breach, plaintiffs sued for ejectment (Count I) and to quiet title (Count II). Both parties moved for summary judgment. The trial court overruled plaintiffs' motion and granted that of the defendants, from which order plaintiffs appeal. We reverse.

The parties entered into a contract dated December 10, 1970, under which plaintiffs agreed to sell and defendants to buy certain real estate for $72,000. $60,000 of that was payable in annual installments, plus interest. Closing documents were deposited in escrow with the First National Bank of Tarkio, Missouri, to be delivered to defendants upon full compliance by them with the contract. Under the contract provisions, defendants were allowed to miss up to two annual principal payments, if necessary, without that being "grounds for foreclosure." The defendants were obligated to maintain insurance and to pay taxes when due. The agreement specifically provided that "nonpayment of the insurance premiums or taxes when they become due and payable shall be considered as a default." A subsequent paragraph provides that in the event the defendants "fail to meet the terms of this contract, the said escrow agent upon the request of [the plaintiffs] shall declare all payments heretofore made by [defendants] be determined rental payments of said real estate and for liquidated damages for the nonfulfillment of this contract and all of said payments shall be retained by [plaintiffs], together with the full right of possession of said land herein described."

The 1975 taxes became due on this real estate on December 31, 1975. Those taxes not being paid by that date, plaintiffs sent notice dated February 9, 1976, to the First National Bank declaring the contract in default. On February 13, plaintiffs served upon defendants Notice to Vacate. Three days thereafter, on February 16, 1976, defendants did pay the 1975 taxes.

All of the facts so far stated are agreed by the parties. Other facts, as to some of which dispute does exist, will be referred to in the course of this opinion.

Plaintiffs' single point on this appeal is that Rule 74.04(c) authorizes summary judgment only where "there is no genuine issue as to any material fact" and subsection (h) prohibits such relief "unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of

law." Plaintiffs assert that the trial court erred because the record in this case as presently constituted leaves for consideration genuine issues of fact concerning defaults by defendants in: (1) maintenance of insurance; (2) payment of the 1975 taxes when due, and (3) late payments of past installments of principal and interest.

It is doubtful whether plaintiffs are in any position to make any argument about either the maintenance of insurance or past late payment of annual installments. This is for the reason that their motion for summary judgment was based solely on the alleged default in timely payment of the 1975 taxes, and plaintiffs specifically stated to the trial court that said default was the one upon which they relied to declare the contract forfeited. Moreover, even if the issues as to insurance and timely past annual installments are properly in issue on this appeal, defendants made a strong showing in regard to both of those matters, except only that their proof pertaining to the continuous maintenance of insurance was presented in the form of unsworn letters and purported insurance records. With respect to whether this served to deprive those items of probative value, see *Allen v. St. Luke's Hospital of Kansas City*, 532 S.W.2d 505 (Mo.App.1976) and compare *Westbrook v. Mack*, 575 S.W.2d 921, (Mo. App.1978). However, these questions need not be pursued, because this appeal can and will be disposed of on the different ground that there are genuine issues of fact pertaining to the late payment of the 1975. taxes.

Defendants freely admit that those taxes were not paid when they became due on December 31, 1975. Their claim is that this eliminates any question of fact and leaves only the question as to the legal effect of that admitted late payment. They go on to argue that the late payment is not sufficiently significant to support a forfeiture. The only authority cited by them in support of that proposition is *O'Fallon v. Kennerly,* 45 Mo. 124 (1869). *O'Fallon* is not applicable here.

*O'Fallon* recognizes the rule that notwithstanding a default in payment upon the day specified and despite an express stipulation for forfeiture, equity may nevertheless decree specific performance of a contract for sale of land in order to prevent consequent unfairness to the vendee. This rule can be justified on the ground that a contract for deed is a form of security device similar in purpose to a mortgage or deed of trust. Just as redemption is permitted to a mortgagee, so also a parallel right of "equitable redemption" should be extended to a vendee under a contract to purchase. Annot., "Specific Performance of Land Contract Notwithstanding Failure of Vendee to Make Required Payments on Time," 55 A.L.R.3d 1, l.c. 16; *H & L Land Company v. Warner,* 258 So.2d 293 (Fla. App.1972). But just as the debtor under a deed of trust must tender full payment of the total amount due in order to accomplish statutory redemption (Section 443.410, RSMo 1969), so also the vendee under a contract for deed must make a similar tender of the full purchase amount in order to be entitled to specific performance. *O'Fallon v. Kennerly, supra* at 129. Defendants made no such tender here and consequently have not brought themselves within the doctrine of *O'Fallon* upon which they rely.

Although not so articulated by defendants, the tenor of their argument seems to be that their delay in paying the 1975 taxes was too minor in character to support the drastic penalty of forfeiture, particularly in view of their prompt curing of the default within three days after notice from the plaintiffs. This general argument invokes consideration of the legal rules relating to whether in a given situation time should be considered of the essence.

Clearly the parties may stipulate by their contract that time is of the essence. 3A Corbin on Contracts, Section 714, p. 358; 8A Thompson on Real Property, 1963 Replacement, Section 4460, p. 339; *Johnson v. Schuchardt,* 333 Mo. 781, 63 S.W.2d 17 (1933); *Branch v. Lee,* 159 S.W.2d 677 (Mo. 1942). Where, as in this case, the parties

have not so expressly stipulated, such a condition nevertheless may be implied depending upon the language of the contract, the purpose which it was intended to serve and all of the surrounding circumstances. *Johnson v. Schuchardt, supra; Branch v. Lee, supra.* This case was not presented to the trial court nor is it presented in this court on the theory of an implied stipulation for time to be of the essence, and therefore there is no way to say with any assurance that the facts have been fully developed in this regard. For that reason alone, this case is not now in a posture for determination on summary judgment.

■ Furthermore, even if the parties at the outset had not intended time to be of the essence, nevertheless plaintiffs assert in their affidavit in support of their motion for summary judgment, "[t]hat on several occasions we told, asked, and otherwise directed defendants to make payments as provided for in said Contract" and "[t]hat on several occasions we told defendants that prompt payment was required and continued failure to do such would result in declaration of forfeiture rights." Those demands, if made as alleged, might have the effect of making time of the essence. 17 Am.Jur.2d, Contracts, Section 334, p. 772; 91 C.J.S., Vendor & Purchaser § 104c, p. 1003; *Wimer v. Wagner*, 323 Mo. 1156, 20 S.W.2d 650 (1929). See also *Rayburn v. Atkinson*, 206 S.W.2d 512, 516 (Mo.1947). On the other hand, these allegations on the part of plaintiffs have been sharply challenged by defendants' affidavit in which they state that, "at no time did the Plaintiffs remonstrate with us or direct us to be prompt in making the payments or paying the taxes, nor did they warn us, iterate or reiterate that our failure to pay on the exact date would result in forfeiture." Thus the matter of whether plaintiffs made demand upon defendants for prompt performance presents a genuine issue of fact which must be resolved on live evidence rather than upon summary judgment based on mere affidavits.

■ Another basis upon which the issue concerning payment of 1975 taxes could have been and may have been resolved by the trial court in defendants' favor would be that plaintiffs have waived or are estopped to assert any demand for prompt payment on the precise date specified in the contract. Forfeitures are highly disfavored by the law and the courts are therefore quick to find a waiver or estoppel in a case of this sort. 8A Thompson on Real Property, 1963 Replacement, Section 4474, p. 421; 3A Corbin on Contracts, Section 754, p. 489; *Bogad v. Wachter*, 365 Mo. 426, 283 S.W.2d 609 (1955); *Rayburn v. Atkinson, supra*; Annot., 55 A.L.R.3d 34, Section 5[c]; Porter, "Installment Contracts For the Sale of Land in Missouri," 24 Mo.L.Rev. 240 (1959); Parrish, "Property—Forfeiture Provisions in Missouri Installment Land Contracts," 29 Mo.L.Rev. 222 (1964).

■ Defendants have produced substantial evidence by affidavit and answers to interrogatories tending to show that plaintiffs did engage in a course of conduct evidencing a waiver of prompt payment under the contract between the parties. However, plaintiffs by their affidavit state that they (at some unspecified times) protested defendants' failure to make payments on time and that plaintiffs on several occasions stated to defendants that "continued failure to do such would result in declaration of forfeiture rights." If those statements were made, then the past waivers would not excuse subsequent late payments. 91 C.J.S., Vendor & Purchaser § 104g, p. 1006; *Rayburn v. Atkinson, supra*. But defendants by their affidavit directly deny that such statements were made to them. In view of these diametrically opposing affidavits, the conflict must be resolved by trial with a regular presentation of evidence by means of which the fact finder may see and evaluate the testimony of the witnesses in person and subject to cross-examination. This constitutes a genuine issue of fact, not appropriate for disposition on summary judgment.

Reversed and remanded for further proceedings.

All concur.