**Mike FALLIN, personal representative of the Estate of Esther Fallin, deceased, Plaintiff-Respondent,**

v.

**Grant V. McCLAIN and Patricia Jo McClain, Defendants-Appellants.**

No. 12953.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 9, 1983.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 16, 1983.

Application to Transfer Denied
March 29, 1983.

Ivella McWhorter Elsey, Robert M. Sweere, Springfield, for plaintiff-respondent.

Loren R. Honecker, Springfield, for defendants-appellants.

TITUS, Judge.

Via a two-count petition filed in April 1980, Esther Fallin sued defendants, husband and wife, for ejectment, rent and possession with respect to a Greene County farm. Defendants appealed from a purported judgment entered July 23, 1981, after the case had been court-tried, but the appeal was dismissed for want of a final judgment. *Fallin v. McClain,* 639 S.W.2d 391 (Mo.App.1982). Upon return of the cause to the circuit court, Mrs. Fallin's death was suggested and her personal representative was substituted as plaintiff in the case. Thereafter on September 15, 1982, the court adjudged on Count I that Mrs. Fallin had been the owner of an undivided ⅕th interest in the farm and on Count II that she had been entitled to $200 a month rental thereon from November 13, 1979 to July 23, 1981. Defendants again appealed.

Before the instant suit was filed Mrs. Fallin's nieces, as plaintiffs, filed a partition suit in December 1975 naming Mrs. Fallin and her son, Homer, as defendants. In February 1977 the defendants herein were named additional parties defendant in that cause. Inter alia, the nieces claimed a ⅕th interest in the farm in question. The nieces filed requests for admissions and in September 1977 defendants herein admitted the nieces, as tenants in common with defendants, were seized of an individual ⅕th interest in the farm. In an interlocutory judgment entered March 15, 1979, the nieces were decreed owners of the ⅕th interest they claimed, and the other ⅘ths interest was set aside to determine the owner or owners in another suit then pending in the Circuit Court of Greene County, wherein Mrs. Fallin and Homer were the named plaintiffs, and defendants herein et al were the named defendants. When it was determined in the suit that the farm could not be partitioned in kind, it was ordered to be sold. However, before this occurred the court on June 7, 1979, at the nieces' request dismissed the partition suit because Mrs. Fallin had purchased the nieces' ⅕th inter-

est in the farm and had recorded the deed thereto. Notice of the motion to dismiss the partition suit was mailed to defendants' lawyer on June 5, 1979.

The recording of the nieces' deed to Mrs. Fallin on June 5, 1979, imparted "notice to all persons of the contents thereof." § 442.390.[1] Also, the fact that defendants herein were properly brought into court in the partition suit made them chargeable with notice of all subsequent steps taken in the cause down to and including the judgment, albeit they had no actual notice thereof. *Meadowbrook Country Club v. Davis,* 384 S.W.2d 611, 613[5] (Mo.1964); *Harriman v. Household Finance Corp.,* 608 S.W.2d 117, 118–119[1] (Mo.App.1980).

The nieces' "First Amended Petition for Partition", filed June 3, 1977, contained a recitation of the purported title history of the farm in question. Among other things it averred that upon the death of one Carrie D. Fallin on January 30, 1975, Esther and her son Homer Fallin *each* became seized of an undivided ⅖ths interest in the subject property. Thereafter, Mrs. Fallin conveyed her ⅖ths interest to one Jerry Mee, and he, in turn, conveyed that interest to Homer. Subsequently, Homer conveyed his ⅘ths interest in the farm to the defendants herein.

At trial of the instant action Mrs. Fallin testified she had resided on the farm some 45 years before moving to Springfield in early 1976. At that time she said she deeded her interest "away", but to whom was not asked. On May 14, 1976, as "a single person" Homer gave his warranty deed to the subject ⅘ths interest to defendants as grantees. How Homer came by all of the ⅘ ths interest deeded to defendants was not shown unless the petition in the partition suit, supra, was correct in the matter. However, defendants denied these allegations in the partition petition except for asserting their ownership of the ⅘ths interest. Nevertheless, all this seems incongruent with the joint claim of Mrs. Fallin and Homer in the second suit above noted wherein they, as plaintiffs, were jointly

---

1. Statutory references are to RSMo 1978.

claiming an interest in the farm adverse to defendants et al and wherein on June 22, 1979, they obtained a temporary restraining order restraining defendants here "from removing, using, selling, or converting to their use the crops, pastures, residence, out buildings, and improvements on" the farm in question.

Shortly after the nieces' conveyance of ⅕ th of the farm to Mrs. Fallin in June 1979, Homer and a friend went to the farm for the avowed purpose of checking on the hay and buildings thereon. Defendant Grant McClain barred their entrance and told Homer to leave without ascertaining his desire for inspection. At the trial of the instant case, defendant Grant McClain said that Homer did not mention his mother on this occasion. On November 13, 1979, Mrs. Fallin wrote defendants that she had purchased a ⅕th interest in the farm and was henceforth charging them $1,000 per month rental thereon. A few days later defendants' lawyer replied asking for confirmation of ownership "by appropriate documents," denied Mrs. Fallin's claim for rent and suggested her responsibility for a share of the taxes, improvements, cost of maintenance, etc., if her claim of ownership proved correct. Mrs. Fallin's reply thereto was the filing of her petition in the present action in April 1980.

■ Section 524.090 provides that "If the [ejectment] action is brought by a joint tenant, or tenant in common, against his cotenant, the plaintiff shall also be required to show on the trial that the defendant actually ousted him, or did some act amounting to a total denial of his right as such cotenant." Also, under § 524.110(2) if the plaintiff prevails in the ejectment action and it is "shown on the trial that the defendant had knowledge of the plaintiff's claim prior to the commencement of the action ... such recovery shall be from the time that such knowledge came to the defendant." On the other hand, if a defendant has not ousted his cotenant or been guilty of acts amounting to a total denial of his right as a cotenant, a defendant who occupies all or more than his proportionate share of the common premises is not liable to his cotenant because of such occupation for rent or for the use and occupation thereof. *Goforth v. Ellis,* 300 S.W.2d 379, 383[5] (Mo.1957); *McFarland v. Braddy,* 560 S.W.2d 259, 268[7] (Mo.App.1977).

Upon appeal defendants' counsel[2] pens: "The status of [Mrs. Fallin] and defendants as tenants in common with respect to the affected premises is beyond question; the trial court so found, and its conclusion in this respect remains unchallenged." We receive this as an admission by defendants upon appeal, contrary to their prior contentions, that Mrs. Fallin, as found and declared by the trial court, was the undisputed owner of an undivided ⅕th interest in the farm. Nonetheless, defendants' first assertion on appeal is that the evidence adduced at trial on the claim of ejectment was insufficient to support the judgment nisi as there was no showing at the trial that defendants had ousted Mrs. Fallin or had done some act amounting to a total denial of her right as a cotenant.

■ When defendants purchased an interest in the farm, they became charged with notice of prior conveyances of the land which were recorded. § 442.390; *Johnson v. Stull,* 303 S.W.2d 110, 117[7] (Mo.1957); *Brown v. Evans,* 182 S.W.2d 580, 582[2] (Mo.1944). Defendants were of course aware of Homer's prior ⅘ths interest in the property and, by the above authorities, were held to be aware that Mrs. Fallin was Homer's immediate grantor of a ⅖th interest. Their admissions filed in the partition suit, the judgment therein rendered, and the belated letter written to the nieces served as evidence of defendants' knowledge that someone other than themselves owned a ⅕th interest in the farm. The November 13, 1979, letter of Mrs. Fallin to defendants imparted notice that she was claiming to be the owner of the ⅕th interest and defendants' reply thereto denied her claim. Defendants' opposition to Mrs. Fallin's claim before suit and their denial of

2. Defendants' counsel on appeal was not their    lawyer when the case was tried.

Mrs. Fallin's claim by answer filed in the litigation between them, would constitute evidence of an ouster. *Minton v. Steele,* 125 Mo. 181, 193, 28 S.W. 746, 749[6] (1894); *Falconer v. Roberts,* 88 Mo. 574, 579 (1886); *La Riviere v. La Riviere,* 77 Mo. 512, 517–518 (1883). We find and hold that the trial court's decision on Count I that an ouster or a total denial by defendants of Mrs. Fallin's right to cotenancy was predicated upon substantial evidence and should not be reversed by this tribunal. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

We now turn to Count II of the petition filed in April 1980 wherein Mrs. Fallin alleged (1) that she is the owner of the farm in question, (2) that she "is an alleged owner" of a ⅘ths interest but defendants also claim ownership of a ⅘ths interest and that she is the owner of another ⅕th interest, (3) that defendants are the lessees of the farm under a month to month tenancy at a monthly rental of $1,000 which is now in arrears, and there is now due and unpaid as of December 1, 1979, rent of $1,000 and (4) that on November 13, 1979 [date of Mrs. Fallin's letter to defendants, supra] she duly demanded said rent but defendants refused to pay same. In whole the prayer reads: "Wherefore, [Mrs. Fallin] prays for a judgment and order of this Court demanding that she be put in possession of the said aforementioned real estate, and that she have and recover of the defendants the sum of $1,000.00 as accrued rent thereon, and her costs herein expended." As previously seen, the court's judgment on this count awarded Mrs. Fallin monthly rental of $200 from November 13, 1979 [date of her letter-demand for rent] to July 23, 1981 [date of the initial purported "judgment"], or for a total of $4,000 ($200 per month for 20 months). For defendants' second point relied on they claim the awarding of monthly rental for 20 months was error as "such judgment was beyond the court's jurisdiction in that it exceeded the relief prayed for in [Mrs. Fallin's] petition."

Under § 524.110 if the plaintiff prevails in an ejectment action he is entitled, by way of damages, to the rents down to the time of assessing the same. If defendant be shown to have had no knowledge of plaintiff's claim prior to commencement of the action, recovery for rent shall be only from the time the action commenced. However, if it be shown defendant knew of plaintiff's claim before the action was commenced, recovery of rent shall be from the time such knowledge came to defendant within five years preceding the start of the action. Albeit under this law Mrs. Fallin may have been entitled to rent for 20 months, nevertheless the amount of damages awarded for rent cannot exceed the claim of the petition. As noted above, in Count II of the petition Mrs. Fallin only asked for $1,000 damages. Therefore, the judgment awarding her $4,000 cannot stand and must be reduced to $1,000, the amount sued for by Mrs. Fallin.

Therefore, the judgment nisi on Count II of the petition is hereby modified by reducing the amount awarded plaintiff herein against defendants from $4,000 to $1,000. *Madget v. Jenkins,* 461 S.W.2d 768, 775–776[8, 9] (Mo.1970) and the cases there cited. As so modified the judgment is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.

GREENE, C.J., and CROW, J., recuse.