Benjamin E. **FUGATE** and Lora Mae Fugate, **Plaintiffs–Respondents,**

v.

Laurie G. **RICE** and Linda K. Spurgeon, **Defendants–Appellants.**

No. 17044.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 5, 1991.

Joanna V. Billingsley, Ozark, for plaintiffs-respondents.

Kay S. Graff, Springfield, for defendants-appellants.

MAUS, Presiding Judge.

This case arises from a "Contract for Deed" providing for the installment sale of 10 acres. After the contract was executed, the Sellers satisfied a judgment against them which was a lien on the property. The day set for the foreclosure of an underlying deed of trust on that 10 acres, they paid the secured indebtedness. The Buyers defaulted in monthly payments, failed to pay ad valorem taxes and maintain insurance. The Sellers demanded performance. The Buyers tendered past due installments and paid two of five years' taxes. They did not obtain or tender insurance. The trial court awarded the Sellers possession of the real property and a judgment of $8,334.01. The Buyers state three points on appeal.

The following is an outline of the basic facts. Benjamin E. Fugate and Lora Mae Fugate, his wife, (Sellers), owned 10 acres near Willard. The tract is improved with two houses, a barn and miscellaneous outbuildings. On July 1, 1982, the Sellers leased the tract to Laurie G. Rice and Linda K. Spurgeon (Buyers) for a term of two years. The rental was $500.00 per month. The lease granted the Buyers an option to purchase the property for $50,000.00 to be paid as follows: $6,000.00 upon the exercise of the option and the balance in monthly installments of $500.00 per month, to be applied first on the interest and the balance

on the principal. The Buyers were entitled to credit against the down payment for rental paid up to the time of the exercise of the option.

The Buyers took possession, cleaned up the premises and made significant repairs and improvements. They moved a mobile home onto the property. They lived in the "gray house". They rented the "white house" for $175.00 per month and rented the mobile home for $175.00 per month.

The Buyers exercised their option to purchase. The exercise of the option was consummated by an "Installment Contract for Sale of Real Estate" dated October 5, 1983. Under that contract, the Sellers agreed to sell and the Buyers agreed to buy the 10–acre tract for $50,000.00. The Buyers were credited with rental payments of $6,000.00 and were obligated to pay the balance in monthly installments of $500.00 due on October 1, 1983, and on the first day of each month thereafter. The unpaid balance of the purchase price was to bear interest at the current Federal Land Bank rate, adjusted annually. Each installment was to be applied first on interest and the balance on principal.

The contract recites that the property is subject to an underlying deed of trust in favor of The Peoples Bank of Clever (the bank). Sellers agreed to pay the payments secured by that deed of trust as they became due. In the event of default, the Buyers were granted the option of correcting the default and crediting the amount paid against the balance due under the contract. The Buyers were required to keep the premises insured for the reasonable value of the improvements and pay all taxes and special assessments.

The Sellers executed a warranty deed conveying the premises to the Buyers. The Buyers executed a quit-claim deed conveying the premises to the Sellers. The deeds were placed in escrow with the bank to be held on customary terms. The contract contains the following paragraph.

"In the event buyer shall fail to pay any of the payments within 30 days after the due date, or shall fail to pay insurance or taxes upon demand, or shall do anything which substantially reduces the value of the premises or otherwise default in the performance of this contract for more than 15 days after receiving written notice from seller of such default, then seller may reenter and resume possession of the premises, and may give notice to escrow agent, and 15 days after the notice is sent, escrow agent shall delivery [sic] the quit-claim deed to seller. Escrow agent shall have no obligation to determine whether or not default has, in fact, occurred. Upon deliver [sic] of the quit-claim deed buyer shall forfeit any payments made on the premises and shall have no further right or interest in the premises."

On October 5, 1983, the balance of the note secured by the deed of trust was approximately $35,000.00. It was payable in installments of $500.00 per month, due on the 19th of each month. At the suggestion of an officer of the bank, it was understood between the parties that the Buyers would make their monthly payments of $500.00 to the bank to be applied upon the secured note. The Buyers did so, although the bank's payment record shows that Buyers never made a payment of $500.00 by the 1st of any month. Often, those payments were made after the 19th of each month.

On May 27, 1987, the Missouri Highway and Transportation Commission (Commission) obtained a judgment against the Sellers in the amount of $7,500.00. On November 22, 1988, the Commission gave notice of an execution sale to be held on December 27, 1988. The Sellers told the Buyers of the impending sale and discussed with them the possibility of Buyers refinancing the purchase of the property from another source. The Buyers delayed in making the November 1988 payment. On December 21, 1988, the Sellers satisfied the judgment and the Buyers were so advised. The Buyers withheld the December 1988 and January 1989 payments. On February 1, 1989, the bank advised the Sellers that the last payment received was in December 1988. The bank determined to accelerate the note. On February 7, 1989, and on Febru-

ary 16, 1989, the Buyers tendered to the bank payments of $550.00. The bank returned the checks with instructions to remit the payments to the Sellers. The Buyers did not do so. On April 11, 1989, the Sellers met with the Buyers and discussed the necessity of the Buyers' remedying their defaults in their performance. At this time, the Sellers learned the Buyers did not have insurance. The Sellers had paid the taxes for 1984, 1985 and 1986. The 1987 and 1988 taxes were not paid.

On April 19, 1989, the bank gave notice of a foreclosure sale to be held on May 31, 1989. On April 25, 1989, the Sellers, by letter, demanded the Buyers bring the note to date, reimburse them for payment of taxes, and supply proof of insurance. On May 24, 1989, the Buyers' attorney responded. The response pointed out the Sellers' failure to make the note payments and said that, in view of the Commission's notice of sale and "the bank's position", the Buyers' failure to pay would not be held against them. The letter requested the Sellers to notify the Buyers of the amount of the taxes the Sellers had paid for 1984, 1985 and 1986, and the balance due under the contract for deed.

On May 31, 1989, the Sellers satisfied their obligations to the bank and the scheduled foreclosure sale was cancelled. The Buyers were informed of this action. Also on May 31, 1989, the Sellers, by letter, again demanded the loan be brought up to date, they be reimbursed for the taxes for 1984, 1985 and 1986, the Buyers pay the 1987 and 1988 taxes, and provide insurance by June 5, 1989. On June 2, 1989, the Buyers' attorney responded by forwarding the Buyers' check for $3,500.00 for the December through June payments, and copies of the 1987 and 1988 tax receipts the Buyers had paid on May 31, 1989. The Sellers were advised that the Buyers were "checking on insurance". They were also advised that the Buyers had incurred attorney's fees due to the scheduled execution sale and foreclosure sale which should be allowed as a credit toward the contract obligation.

The Sellers' petition was filed on July 10, 1989. The case was tried to the court on February 27, 1990 and March 30, 1990. On May 21, 1990, the trial court made detailed findings of fact. The trial court awarded the Sellers possession of the premises and $8,334.01 on Count I of their amended petition. It denied Count II of the Sellers' amended petition. It entered judgment against the Buyers on their counterclaims.

The Buyers' first point is that the trial court erred because its judgment "is against the weight of the evidence in that it disregards plaintiff's [Sellers'] breach and plaintiffs failed to show defendant's [Buyers'] breach was material to the extent necessary to support a forfeiture." The Sellers' "breach" the Buyers are referring to is that the Commission recovered a judgment against the Sellers which was a lien on the property and also that the bank accelerated the note and scheduled a foreclosure sale.

The Sellers' alleged breach does not, in the circumstances of this case, excuse the Buyers' performance of their obligations under the contract. The applicable general rule has been stated: "The purchaser is not excused from tender or performance and may not rely on an anticipatory breach of the contract unless the defect is 'irremediable' and of course unpaid taxes and mortgages are not irremediable defects." *Hellrung v. Hoechst*, 384 S.W.2d 561, 564 (Mo.1964). It is not necessary to consider if the affirmative covenant of the Sellers to pay the note secured by the underlying deed of trust alters that general rule. See *Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119 (Mo. banc 1979).

In any event, an overriding principle is applicable.

"Even though a breach is serious enough to justify the injured parties suspending performance, the party in breach often can cure his breach by correcting the deficiency in his performance...." E. Farnsworth, Contracts § 8.17 (1982).

See also 77 Am.Jur.2d, Vendor and Purchaser, § 241.

The Buyers also support their first point by reciting the maxim that forfei-

tures are not favored in equity, citing *Bogad v. Wachter*, 365 Mo. 426, 283 S.W.2d 609 (1955) and *Plymouth Securities Company v. Johnson*, 335 S.W.2d 142 (Mo. 1960). Buyers also cite "Section 241, Contracts Second, Chapter 10, page 237 [sic]" to establish their failure to perform their obligations was not material. They conclude by the following. "Under these guidelines, Defendant/Appellant's contend that the Plaintiff/Respondent had, at all times the contract was in effect, the ability to carry their own insurance and pay the taxes and add the cost to Defendant/Respondent's debt due."

The legal snares involved in the use of a contract for deed to finance the purchase of real property have been catalogued and discussed. Nelson & Whitman, Real Est. Fin. Law § 3.29 (2d ed.1983). As developed in those discussions, the strict enforcement of a contract for deed can produce harsh results. The courts, to avoid such harsh results, have employed various ameliorating doctrines. For example, "[f]orfeitures are highly disfavored by the law and the courts also look to find a waiver or estoppel to assert prompt payment on the date specified in the contract." *Long v. Smith*, 776 S.W.2d 409, 413 (Mo.App.1989). Also, the interest of the Buyers under a contract for deed has been equated with a mortgagor's equity of redemption. This doctrine has been summarized.

"*O'Fallon [v. Kennerly*, 45 Mo. 124 (1869) ] recognizes the rule that notwithstanding a default in payment upon the day specified and despite an express stipulation for forfeiture, equity may nevertheless decree specific performance of a contract for sale of land in order to prevent consequent unfairness to the vendee. This rule can be justified on the ground that a contract for deed is a form of security device similar in purpose to a mortgage or deed of trust. Just as redemption is permitted to a mortgagee, so also a parallel right of 'equitable redemption' should be extended to a vendee under a contract to purchase. Annot., 'Specific Performance of Land Contract Notwithstanding Failure of Vendee to Make Required Payments on Time,' 55 A.L.R.3d 1, l.c. 16; *H & L Land Company v. Warner*, 258 So.2d 293 (Fla.App. 1972). But just as the debtor under a deed of trust must tender full payment of the total amount due in order to accomplish statutory redemption (Section 443.410, RSMo 1969), so also the vendee under a contract for deed must make a similar tender of the full purchase amount in order to be entitled to specific performance. *O'Fallon v. Kennerly, supra* at 129. Defendants made no such tender here and consequently have not brought themselves within the doctrine of *O'Fallon* upon which they rely." *Cochran v. Grebe*, 578 S.W.2d 351, 353 (Mo.App.1979).

Also, in an appropriate case, the following doctrine has been enunciated.

"Also if the amount or value of the property stipulated as liquidated damages for breach of contract is greatly disproportionate to the ensuing loss, the court will construe it to be a penalty and restrict the damages recovered to those actually suffered." *Plymouth Securities Company v. Johnson*, 335 S.W.2d 142, 152 (Mo.1960).

It is not necessary to further consider such doctrines. The evidence was undisputed that the rental value of the property was $500.00 per month. The Buyers had only paid approximately $6,000.00 on the principal of the purchase price. They had collected substantial rentals for portions of the property. For one year only the Buyers obtained insurance, in an amount not disclosed by the record. However, they let that insurance lapse because they felt it was "too expensive." They testified they could not find any insurance they could afford. When the Sellers learned there was no insurance, they insured the improvements on the property for $50,000.00.

The trial court found: "Failure to procure insurance places the holder of a note, or the owners, as here, at greater risk than failure to make payments. As to the monthly payments, they can be missed or paid late, and the owner may be able to deal with that. But the destruc-[sic] of the improvements with no insurance coverage

is a loss that few owners or mortgage holders can survive, if they are individuals." This is a determination that the Buyers defaulted in their obligation under the contract and that such default was material. It obviously was a material default. *Cochran v. Grebe* supra.

The Buyers did not tender the full purchase price. They did not tender the Sellers' reimbursement for the 1984, 1985 and 1986 taxes, nor for the insurance. They did not tender performance of their obligation to maintain insurance. Their actions do not invoke any doctrine excusing their continuing material breach of the "Installment Contract for Sale of Real Estate". The first point has no merit.

■ The Buyers' second point is that the trial court erred because the evidence established the Sellers had waived the requirement of insurance. They base that claim of waiver on the Sellers' failure to enforce the requirement of insurance during the life of the contract. The record establishes that immediately after they learned the Buyers did not maintain insurance on the property, the Sellers made consistent demands that the Buyers insure the property. A party cannot be held to have waived a breach of contract where there is no evidence that the party knew of the breach. *Ralston Purina Co. v. Custom Canners, Inc.*, 500 F.Supp. 218 (E.D.Mo. 1980). The second point is denied.

■ Buyers' third point is that the trial court erred in awarding "plaintiffs $8334.01 for rental and damages because that amount is beyond the scope of plaintiff's [sic] pleading in Count I and the court denied plaintiff's Count II." Count I alleges that since January 1, 1989, the Buyers failed to pay the monthly installments under the contract and the contract "is null and void." That count continues as follows: "4. That the Defendants owe the Plaintiffs as rent on said property after the contract became null and void the sum of $4,000.00 to and including the 1st day of August 1989. WHEREFORE, the Plaintiffs pray for judgment of for [sic] the possession of the property and monthly rental as set out herein."

As stated, there was substantial evidence that $500.00 per month was a reasonable rental for the property. The trial court found this to be true. The Sellers argue the judgment of $8,334.01 is correct because it is an award of rent at the rate of $500.00 per month, 16 months and 21 days, i.e., from January 1, 1989 to May 21, 1990, the date of the judgment. That argument is factually flawed.

Sellers' amended petition reads: "COUNT I (Ejectment)". The allegations of that count do state the essential elements of a cause of action in ejectment. *Atkinson v. Smothers*, 291 S.W.2d 645 (Mo.App.1956). That being so, the Sellers were entitled to recover "damages for all waste and injury, and, by way of damages, the rents and profits, down to the time of assessing the same". § 524.110. The prayer of Count I is for possession and monthly rental "as set out herein." It is not limited to the amount of $4,000.00 which was alleged to have accrued "to and including the first day of August 1989." Cf. *Fallin v. McClain*, 647 S.W.2d 208 (Mo. App.1983).

Count I stated a cause of action in ejectment. Under that count, the Sellers were not entitled to recover for the Buyers' breach of contract by failing to make monthly payments. Count II stated a cause for breach of contract. The court denied Count II. The Sellers have not appealed. The Sellers were entitled to "damages, the rents and profits" only after they were entitled to possession. The Sellers' demand of May 31, 1989 established this time to be 5:00 p.m. on June 5, 1989. Accepting the determination that a reasonable rental was $500.00 per month, the Sellers were entitled to a monetary judgment on Count I for $500.00 per month from June 5, 1989 to May 21, 1990.

Rule 84.14, in part, states: "The appellate court shall ... give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case...." Judgment of the trial court is amended to assess the damages of Sellers at $5,750.00. As so mod-

ified, the judgment of the trial court is affirmed.

PREWITT and CROW, JJ., concur.