Matthew BARNETT, Respondent,

v.

Melvin D. DAVIS, Husband, and Mary K. Davis, Wife, Appellants.

No. WD 72138.

Missouri Court of Appeals, Western District.

March 22, 2011.

Rehearing Denied May 3, 2011.

Daniel L. Radke, St. Joseph, MO, for Appellants.

Larry D. Goins, St. Joseph, MO, for Respondent.

Before Division II: KAREN KING MITCHELL, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

KAREN KING MITCHELL, Presiding Judge.

Melvin D. Davis and Mary K. Davis ("the Davises") appeal the Circuit Court of Andrew County, Missouri's ("trial court") entry of summary judgment in favor of Matthew Barnett ("Barnett"). The judgment ordered Andrew County Title and Abstracts, Inc. ("Title Company") to return to Barnett earnest money in the amount of $15,400 that had been provided in connection with a contract for sale of real property. We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

On October 4, 2008, Barnett was the highest bidder at a real estate auction conducted on the premises of 205 North 12th Street in Savannah, Missouri. On that day, Barnett entered into a contract to purchase 205 North 12th Street from the Davises for $154,000. The contract required Barnett to pay $15,400 "as earnest money and as part of the purchase price and consideration for [the] agreement, and upon delivery of the deed," Barnett was to pay the balance of the purchase price. The contract provided that the closing of the sale was to take place at the office of Title Company on November 4, 2008, at 10:00 a.m., and that time was of the essence.

Approximately a week after contracting to purchase the property from the Davises, Barnett learned that his wife intended to divorce him. Barnett then visited the Davises, explained his situation, and offered to split the earnest money evenly with them if they would let him rescind the contract. The Davises refused. A few days later, Barnett stopped payment on his check for the earnest money. Mary Davis reported this fact to the county prosecutor. Ms. Davis notified Barnett that his act of stopping payment on the check could be prosecuted as a felony. Barnett then issued a new check for the earnest money and delivered it to Title Company. The check was accepted by Title Company and by the Davises.

Sometime prior to the scheduled November 4, 2008 closing date, Barnett spoke with Cliff Black, one of the owners of Title Company. Barnett stated that he was waiting for funds to come in from his business and that he was seeking an extension of the closing date. Black communicated Barnett's request to the Davises, who responded that they would extend the closing date if Barnett would provide an

additional $10,000 in earnest money. Barnett refused, stating that he wanted out of the deal and that he would not pay any more earnest money. Black concluded that this meant that Barnett might not show up for closing on November 4, 2008, and relayed his conclusion to the Davises.

Barnett claimed that on November 4, 2008, at approximately 9:50 a.m., he drove to Title Company and parked in front. He could see Black and a female employee inside but did not see the Davises. Nor did Barnett see the Davises' van anywhere near Title Company. Barnett claimed that he waited in his truck in front of the building for approximately thirty minutes. When the Davises had not shown up by 10:20, Barnett left. Barnett claims that he went by the Davises' house, knocked on the door, and received no answer. But the Davises stated that they were home all morning on November 4 and did not hear anyone at the door. The Davises were waiting for Black to call to tell them that Barnett was ready to close, and then they had planned to drive the short distance, approximately a two-minute drive, to Title Company to perform their part of the closing. Since Black did not call, they never left the house.

Barnett subsequently called Title Company to tell Black that he had been in front of the building ready to close but that he did not come in because the Davises never presented themselves. Barnett wanted Black to return his earnest money since the Davises failed to show up for closing. Black responded that the matter would have to go to court.

Barnett filed a petition for declaratory judgment and breach of contract, asking the court to declare that the Davises had breached the contract for sale by failing to close at the time specified in the contract, and seeking the return of his earnest money. The Davises filed a counterclaim for breach of contract, seeking to be awarded the earnest money as liquidated damages from Barnett's breach of the contract. Barnett moved for summary judgment, which the court granted. This appeal follows.

### Standard of Review

We review the court's grant of a motion for summary judgment *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). In reviewing a trial court's grant of summary judgment, we use the same criteria that the trial court should have employed in granting the motion initially. *Id.* We review the record in the light most favorable to the party against whom judgment is entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.*

### Legal Analysis

■ The Davises raise a single point on appeal. They claim that the trial court erred in granting Barnett's motion for summary judgment because a genuine issue of material fact exists as to whether Barnett breached his obligations under the contract before the Davises breached the contract. The Davises cite to Missouri's "first to breach" rule, stated in *R.J.S. Security, Inc. v. Command Security Services, Inc.,* 101 S.W.3d 1, 18 (Mo.App. W.D.2003), which provides that "a party to a contract cannot claim its benefit where he is the first to violate it." A breach of an agreement by one party will excuse the other party's performance, however, only if the breach is material. *Id.*

The Davises claim that a genuine issue of material fact exists as to whether Barnett first breached the agreement. The Davises mischaracterize their arguments as factual in nature. The only relevant

factual disagreement between the parties is whether Barnett was actually parked in front of Title Company on the morning of November 4, 2008, as he claims. But Barnett's presence is not relevant if either of the Davises' two claims of breach by Barnett prior to November 4, 2008, succeed as a matter of law. Nor is Barnett's presence at Title Company relevant if the Davises' admitted failure to appear at the Title Company on November 4, 2008, constitutes a first material breach. Each of these issues is a question of law. Therefore, we will address the Davises' three legal claims of first breach by Barnett.

■ First, the Davises argue that by stopping payment on his check for the earnest money Barnett committed a material breach excusing their performance, while Barnett counters that any breach was "cured" by his issuance and the Davises' acceptance of a replacement check. Neither party cites any legal authority to support its position. As the appellants, the Davises bear the burden of establishing that the ruling of the trial court was in error, and their burden includes developing a reasoned argument that supports their point on appeal, complete with citations to relevant legal authority. *Eagle ex rel. Estate of Eagle v. Redmond,* 80 S.W.3d 920, 926 (Mo.App. W.D.2002). In any event, as to their first argument, it is well established that a party in breach may cure his breach " 'by correcting the deficiency in his performance.' " *Fugate v. Rice,* 815 S.W.2d 466, 469 (Mo.App. S.D.1991) (quoting E. Farnsworth, CONTRACTS § 8.17 (1982)). The Davises admittedly accepted the replacement check from Barnett, so to this end their point clearly lacks merit.

Next, the Davises claim that Barnett's statement to Black that he would not pay any more earnest money and that, although he was "trying to get the money,"

he "want[ed] out of the deal" constitutes a breach. Again, the Davises cite to no authority other than case law generally acknowledging the "first to breach" rule, and again, as the appellants, the Davises bear the burden of establishing error and citing to relevant legal authority. *Eagle,* 80 S.W.3d at 926. Therefore, the Davises' second argument in support of its claim of legal error also fails.

■ Finally, the Davises claim that Barnett's failure to enter Title Company's building on the date of closing constitutes a "first breach" that would excuse their performance under the contract. The only support they offer for this theory is Black's affidavit stating that:

> it is not necessary for the seller and buyer to be physically present at the same time in order for a real estate closing to occur. Occasionally, the deed will be prepared and signed by the seller after the buyer has presented his/her payment of the purchase price to Andrew County Title as the escrow agent. Andrew County Title will then deposit/disburse the funds on behalf of and to the seller and record the real estate deed for the buyer.

We find that the scenario Black describes, although perfectly acceptable, is not what was prescribed by the real estate contract at issue in this case. The contract clearly states that the closing will take place at 10:00 a.m. on November 4, 2008, and states that time is of the essence. Moreover, the contract obligates the Davises to deliver to Barnett a "general warranty deed free and clear from all liens and encumbrances whatsoever" and Barnett "shall then and there pay the balance." Therefore, the contract requires the Davises to deliver title to Barnett *before* Barnett is required to pay the balance of the purchase price. The agreement anticipates either both parties being physically present at 10:00 a.m.

on November 4, 2008, for the closing or all steps necessary to transmit the warranty deed having been completed by the Davises before that time so that their agent could deliver the deed for them at the designated closing time.

The facts put forward by the Davises in response to Barnett's motion for summary judgment reflect that the deed was not completed by the Davises prior to 10:00 a.m. on November 4, 2008. Specifically, Black's affidavit states that had Barnett appeared at the Title Company's office that morning, he "would have prepared the deed and contacted the Davises ... for the purpose of requesting they come to [the] office to sign the paperwork (including the deed to the property)." Because the contract required the Davises to provide a general warranty deed before Barnett was obligated to pay the balance, and because the only reasonable inference from the facts presented was that the Davises had not completed all necessary paperwork prior to 10:00 a.m. on November 4, 2008, their presence at closing was necessary to fulfill their contractual obligations.

The Davises' brief argues that they were "constructively" present for the closing because Black, as their agent, was present at Title Company at 10:00 a.m. and because they were "on call" and could have appeared if Barnett had been present. The Davises cite no legal authority to support this position. Missouri law is clear that conclusory statements alone are insufficient; when a party does not support its point on appeal with citation to relevant legal authority, the point is deemed abandoned. *Johnson v. Buffalo Lodging Assocs.*, 300 S.W.3d 580, 582 (Mo.App. E.D. 2009).

■ While we acknowledge that generally an agent who is vested with sufficient authority may act on behalf of the principal, the uncontroverted facts, as set out in support of the motion for summary judgment, do not support the Davises' position that Black could have completed their contractual obligations. The fact that Black was the Davises' agent for *some* purpose does not mean that he had authority to close the transaction on behalf of the Davises (specifically that he had the authority to execute the warranty deed), such that the Davises' physical presence was unnecessary. In paragraph two of Barnett's statement of uncontroverted facts submitted to the trial court, Barnett alleges that Black was the Davises' agent, but the Davises, in their response, admit only that Title Company was the "escrow agent" and denied "the remaining assertions in [Barnett's] paragraph 2." As noted above, the Davises' response goes on to state that if Barnett had presented himself at Title Company, Black "would have then contacted the Davises and finished up the closing process." Under the facts of this case, the Davises, by not presenting themselves at the place of closing, breached the contract.[1] However, the question remains, whether the Davises' conduct constitutes a *material* breach that would relieve Barnett of his obligations under the contract.

■ In determining whether a breach is material, several factors are important including: (1) the extent to which the injured party will be deprived of his contract benefit; (2) the extent to which the party in breach will suffer forfeiture; (3) the likelihood that the party in breach will cure his breach *considering all relevant*

---

1. The Davises do not argue that return of the earnest money to Barnett is not an appropriate remedy if the Davises were first to breach, nor do they argue that Barnett's motion for summary judgment should have been denied if their conduct and Barnett's amounted to a mutual breach.

*circumstances;* and (4) the extent to which the breaching party's behavior comports with good faith and fair dealing. *See* RE- STATEMENT (SECOND) OF CONTRACTS § 241 (1981). Considering these factors, *despite* the contract's provisions requiring the Davises to perform first and stating that time is of the essence, we cannot say, as a matter of law, that the Davises' failure to present themselves at Title Company for closing at 10:00 a.m. on November 4, 2008, constitutes a material breach.

First, the Davises' failure to appear at Title Company at 10:00 a.m. did not make it significantly less likely that Barnett would receive his benefits under the contract. The Davises claimed that they were "on call" at their home and that, had Barnett entered Title Company, Black would have called them to stop by his office so that they could sign the necessary paperwork to complete their real estate transaction with Barnett. The reasonable inference from the evidence is that the Davises were anxious to sell the property to Barnett and that if he had entered Title Company's office or contacted Black by telephone, informing Black of his presence, the Davises would have presented themselves to sign the deed over to Barnett.

Second, as the party in breach, the Davises had much to lose by not performing at closing. They had already undertaken the expense of auctioning their property and had already purchased another property. They needed the funds from the sale to pay their expenses. Third, there was a strong likelihood that the Davises would have cured their breach. The evidence is uncontroverted that Black, as the Davises' agent, would have telephoned them had Barnett made his presence known, and that the Davises were only minutes away, able to close, and they did not appear sooner only because Black had inferred from his earlier conversations with Barnett that Barnett might not show up for the closing. This is in contrast to *F.J. Miceli & Slonim Development Corp. v. Dierberg,* 773 S.W.2d 154, 155 (Mo.App. E.D.1989), cited by Barnett, where the sellers had no representative present when they failed to show up for closing, had not let anyone know that they would not be present at the designated time, and had no reason to delay appearing at closing. Finally, the Davises appeared to be acting in good faith. The reasonable inference from the facts presented is that the Davises strongly desired to sell the property per the contract with Barnett and that it was Barnett who wanted out of the deal, implied that he might not perform, and then took advantage of the Davises' reliance on his implication.

Considering all of these factors, we cannot say as a matter of law that the Davises' failure to perform at the time specified in the contract was a *material* breach which would have excused Barnett's performance altogether, especially since Barnett was the party moving for summary judgment and the trial court was thus required to make all reasonable inferences in the Davises' favor. We therefore conclude that the trial court erred in granting summary judgment.

## Conclusion

For the above reasons, we reverse the grant of summary judgment in favor of Barnett and remand for further proceedings consistent with this opinion.

JOSEPH M. ELLIS and VICTOR C. HOWARD, JJ., concur.