SPOTO, I. C., Associate Judge.
The appeal and cross appeal arise from a controversy over some 122 acres of undeveloped land at Cocoa Beach in Brevard County, Florida, which was the subject matter of an agreement for deed. Peninsula Land Company, Gus C. Edwards and his wife, Clara M. Edwards, (appellees and cross appellants herein) filed suit to recover 17 acres which they had conveyed to the purchasers under the agreement for deed and to quiet title to the remaining 105 acres still unconveyed. The defendants included the original purchasers, T. W. May and A. A. Franklin, partners trading as Pan American Construction Co., their as-signee or purported assignee as contract purchaser, Fred F. Stoneman (appellant and cross appellee herein), and Christopher J. Gorman, ultimate grantee of the 17 acres. At the time of suit, May and Franklin made no claim to any of the property. Stoneman and Gorman both filed answers resisting the relief sought by the plaintiffs, and Stone-man also counterclaimed for specific performance of the agreement to deed the remaining 105 acres. Based on a voluminous record of pleadings, evidence and arguments, the trial judge, sitting as chancellor, refused to require either that the 17 acres be returned to plaintiffs or that they specifically perform the agreement for deed as to the remaining 105 acres and quieted title to the 105 acres in the plaintiffs. Of all the defendants, Stoneman alone appealed, challenging the elimination of any further *762 rights against the vendors under the agreement for deed. Appellees cross appealed in their effort to recover the 17 acres.
Appellees have been responsible for much of the development of Cocoa Beach over the years. The disputed tract is part of a considerably larger area of undeveloped property which they still own. May and Franklin, who had been building a subdivision at Melbourne, represented to ap-pellees that they were highly successful developers with ample financial resources, running into millions of dollars, to build a fine development. Appellees were interested in enhancing the value of their remaining property and not merely selling the 122-acre tract. Accordingly, on a total sales price of $89,500, they accepted a down-payment of only 10%, which was enough to pay a sales brokerage. The balance was payable in four equal installments with interest at 5% per annum, payable semiannually after November 4, 1955, the date of their agreement for deed.
However, to assure the desirable development of the property in a timely and orderly manner, appellees included in the agreement for deed elaborate requirements that the purchasers develop the property by clearing and grading it, building roads and streets (which would also serve appellees’ adjoining property), and by erecting buildings and improvements of beauty and individuality, avoiding “row house” appearances and conforming to specified minimum standards and a specified sequence of improvements. Under the express terms of the agreement, the purchasers agreed to buy and improve the property on that basis, represented that they were financially able to buy and pay for the property and to pay for and finance all development and improvements, recognized that they were being sold the property in bulk for the purpose of development because of the character, credit and reputation which they represented themselves to have, promised not to permit any liens or any other instruments to be recorded which would cloud the title, and covenanted not to transfer their rights under the agreement without appellees’ written consent. Time was stated to be of the essence for the performance of all of the-purchasers’ obligations and covenants, with the provision that after any default upon ten days’ notice or after thirty days without any notice or demand, appellees could sell any unconveyed land to others. Clouding of the title, it was specifically provided, would cause the purchasers to lose all of their rights under the agreement, which was not to be recorded.
When the first semi-annual installment became due early in May of 1956, the purchasers induced appellees to deed over to-them 17 acres for a prospective shopping-center, based on representations made by the purchasers to appellees at that time. On June 14, 1956, the parties were still in friendly discussion about deeding over additional land, although there had been no work done on the property except for a small amount of surveying and except for the clearing of about 47 acres of the entire tract. Then appellees learned that the un-conveyed and unplatted property was being advertised for sale at an auction to be held on June 23, 1956, rather than being developed as agreed, and appellees thereupon notified the purchasers that their contract was cancelled. Between that time and November of 1956, when appellant made a tender of the semi-annual payment which would then have been due if the contract had remained in force, appellees notified the purchasers and appellant of numerous grounds for cancellation of the agreement, including: misrepresentation of their financial condition and intentions when the contract was negotiated, failure to develop the property, failure to pay for the surveying and clearing which had been done and thereby permitting claims of lien to be filed against the property, recording or causing to be recorded various instruments which clouded appellees’ title, and transferring the purchasers’ rights to appellant without ap-pellees’ written consent.
Appellant has repeatedly maintained that appellees are entitled only to the payments specified in the agreement for deed and that they cannot legally complain about the *763 other breaches. He continued to tender ■each of the subsequent semi-annual installments, and each was rejected. Even in his answer and counterclaim appellant renewed his offer of the money, although no formal tender was made in court. There has been no effort to comply with the remaining obli.gations of the purchasers under the agreement for deed.
Suit was not filed until March of 1959, after the contract would have been fully performed if its terms had been carried out by the parties. Not until July 1, 1959, when the counterclaim was filed, did appellant make any effort to obtain judicial enforcement of the contract.
The Chancellor found that appellees were well within their rights in cancelling the balance of the agreement for deed, in view of the material breaches of the purchasers’ covenants. His refusal to rescind the deed to the 17 acres was predicated on the conclusion that appellees had no right to rely on any misrepresentations made when the deed was executed and, inferentially at least, that they had waited too long to seek rescission of the deed. In denying specific performance of the balance of the contract, the Chancellor emphasized the long delay between June of 1956, when appellees first declared the contract terminated, and July of 1959, when specific performance was sought.
In this court, as below, the parties have argued primarily questions of rescission and laches. However, it seems that the basic question is whether the contract was effectively terminated prior to suit. If so, ap-pellees are entitled to have their title quieted to the unconveyed 105 acres and appellant is not entitled to specific performance of the balance of the contract.
The determination of this appeal would appear to be governed by the holdings in Realty Securities Corp. v. Johnson, 1927, 93 Fla. 46, 111 So. 532; Goldfarb v. Robertson, Fla.1955, 82 So.2d 504, and other similar cases, to the effect that, where a contract for the sale of property has been partially executed, by deed of a portion of the property or otherwise, and the purchaser has failed to carry out his commitments and made no provision for carrying them out, the purchaser will be deemed to have abandoned the contract and the seller may declare and treat it as forfeited and terminated in accordance with its terms. He may thereupon take proper steps in equity to obtain the removal of the cloud upon the title by cancellation of record of the contract or have other comparable relief. The language in the instant contract was clearly sufficient for such termination, forfeiture, and equitable relief. There was ample evidence upon which the trial court could conclude that the purchasers had abandoned the contract, notwithstanding the perfunctory tenders made every six months. Moreover, although appellees offered in their complaint to do equity and refund the deposit under the contract if the Court should find a forfeiture improper, appellant took the position below that the property had not increased in value. Accordingly, considering the cost of sale, abstracts, unpaid taxes, return of growth upon the cleared land, and the loss of interest upon appellees’ investment, this case falls outside the line of cases holding that a substantial deposit may not, under some circumstances, be retained by the seller.
Besides being delinquent in the performance of the contract, the purchasers were remiss in sitting back and not seeking the aid of the courts. The seller likewise was remiss, despite ample business experience and warning signals, with no right to rely on the purchasers’ representations at that time, in deeding the 17 acres to the purchasers and then waiting nearly three years before seeking to recover the deeded acreage.
After carefully considering all of the assignments of error in both the appeal and cross appeal, this Court is of the opinion that the decree of the Chancellor below was correct and equitable.
Affirmed.
ALLEN, C. J„ and KANNER, J„ concur.