258 So.2d 293 (1972)
H & L LAND COMPANY, Inc., a Florida Corporation, Appellant,
v.
Dana WARNER, Appellee.
No. 71-589.
District Court of Appeal of Florida, Second District.
February 11, 1972.
Rehearing Denied March 15, 1972.
*294 Frederick Chase, Jr., New Port Richey, and Carleton L. Weidemeyer of Wightman, Rowe, Weidemeyer & Federico, Clearwater, for appellant.
Harvey V. Delzer, of Delzer, Edwards & Martin, Port Richey, for appellee.
LILES, Judge.
This is an interlocutory appeal wherein H & L Land Company, Inc., appellant here, sold one of its parcels to appellee, Dana Warner. Documentary evidence of the sale was an installment land sale contract, sometimes called a contract for deed, which the buyer promptly recorded in the public records. The seller took a down payment of ten per cent, and the balance bore interest and was payable in monthly installments over a period of approximately ten years, with prepayment privileges. The buyer had the obligation to pay real estate taxes after the year of sale. We may assume that the buyer took possession or had the right to do so. Under the contract, the buyer was entitled to a deed only upon payment of all installments plus interest. The buyer paid installments for five or six years, and then *295 stopped doing so, not because of any fault of the seller. Soon after the buyer fell into default, the seller made demand for the delinquent installments, but the buyer did not respond, and communications ceased. We cannot determine from the record whether the seller gave the buyer notice of an election to terminate the contract with a reasonable opportunity for the buyer thereafter to cure the default. In any event, after four years of mutual silence, the buyer tendered to the seller the entire unpaid balance of the purchase price plus interest, and demanded a deed. The seller refused to accept payment or give a deed, and insisted that the buyer, because of his default, had forfeited further rights in the land. The buyer sued for specific performance of the contract, and the seller counter-claimed for removal of the contract as a cloud on the seller's title. The contract did say that if the buyer failed to pay any installment, the seller was entitled to terminate the contract, repossess the land, and keep all money already received; the seller relies upon those provisions to justify the position that the seller has no further obligation to the buyer and that the buyer has no further rights in the land. Before this action was commenced, the seller made no offer to refund any monies already received upon the purchase price. In responding to the buyer's complaint in this action, the seller offered to refund any monies that exceeded the fair rental value of the land plus the seller's expenses incurred in selling the land and in collecting the purchase price; but the seller contended that the monies received did not exceed the sum of the rental value and expenses, and, accordingly, that no refund was necessary. In effect, then, the seller wants to keep the down payment plus monthly installments paid for more than five years, and also to get back all of the land sold.
The buyer contends that the contract made him the equitable owner of the land, that the seller held legal title as security for the balance of the purchase price, and that the seller cannot unilaterally and summarily extinguish the buyer's equitable title, notwithstanding the buyer's default in payment, but must invoke the remedy of foreclosure, thus giving the buyer an opportunity to redeem.
The trial court agreed with the buyer's position, and held that the parties were in essentially the same position as if the seller held a purchase money mortgage to secure the buyer's performance of the buyer's contract obligations.
We hold that the vendor under a specifically enforceable installment land sale contract, who has received part of the purchase price and has given the vendee possession of the land and the benefits and burdens of ownership, is in essentially the same position as a vendor who has conveyed the legal title and taken back a purchase money mortgage, and he cannot unilaterally and summarily extinguish the vendee's equitable title upon the vendee's default.
An installment land sale contract, or so-called contract for deed, evidences a sale of the land and an obligation of the seller to convey and of the purchaser to pay the purchase price in installments, usually extending over a long period of time, and is essentially a security instrument taking the place of a purchase money mortgage. In Florida, it is subject to a documentary stamp tax both as a conveyance and as a written obligation to pay money and to an intangible tax as a money obligation secured by a real property lien. See §§ 3.6 and 17.60, Florida Real Property Practice I (2nd ed. 1971).
The doctrine of equitable conversion is established in Florida. See Arko Enterprises, Inc. v. Wood, Fla.App. 1966, 185 So.2d 734, and cases cited therein. If a land sale contract is specifically enforceable, and is free of equitable imperfections, the vendee becomes the equitable owner of the land and the vendor holds legal title as security for the vendee's performance.
*296 Moreover, we concur with the decision of the District Court of Appeal for the First District in Mid-State Investment Corporation v. O'Steen, Fla.App. 1961, 133 So.2d 455, holding that an installment land sale contract is in essence a mortgage, and pursuant to Fla. Stat. § 697.01, F.S.A., the safeguards for the debtor and the remedies for the creditor are the same as those between a mortgagor and mortgagee. Appellant urges us to disregard the Mid-State holding, on the ground that the installment seller in that case was really no more than one who financed the buyer's purchase from a third party, whereas in the case now before us the installment seller made a direct sale to the buyer. We are unwilling to declare that the Mid-State reasoning is inapplicable here. By way of dictum, the Supreme Court of Florida in Huguley v. Hall, Fla. 1963, 157 So.2d 417, recognized that in Florida a defaulting purchaser pursuant to a contract for deed is ordinarily entitled to an opportunity to redeem (sometimes inaccurately called an "equity of redemption"), subject to the protection of a court of equity.
We do not consider that the issue here is controlled by those cases in which a defaulting buyer did not seek to pay the amounts owed to a non-defaulting seller but on the contrary sought to get back amounts already paid. E.G., Williams v. Crouch, Fla. 1966, 186 So.2d 491.
Nor do we consider that our decision in Stoneman v. Peninsula Land Company, Fla. App. 1960, 124 So.2d 760, is controlling here. In Stoneman, the buyer sought specific performance but had not performed and did not tender performance of material requirements relating to property improvements that were an important part of the consideration to be received by the seller.
The issue here is significant, and has been difficult for us to resolve. Appellate decisions involving the question have not been uniform and clear. More certainty and predictability is desirable. Legislative attention may be needed. See Boyer, Florida Real Estate Transactions § 4.07 (rev.ed. 1971). With respect to rights, remedies, and safeguards, we believe that there should not be substantial differences based solely upon whether the buyer's obligation to pay the deferred portion of the sale price is evidenced and secured by an installment land sale contract or by a purchase money mortgage. In the absence of statutory direction to the contrary, we seek by our holding to afford well-established safeguards to an installment buyer and to allow an installment seller a reasonable and traditional remedy.
Our holding applies to installment land sale contracts. It does not apply to ordinary short-term real estate contracts, such as those commonly called deposit receipt contracts, intended to govern the rights and obligations of seller and buyer while the parties prepare for closing, which preparations customarily include determination of good title and preparation of closing documents, and sometimes include a survey and financing arrangements. Our holding also does not apply to a sales contract that is not specifically enforceable or to one under which the buyer has no right to possession or other benefits and burdens of ownership. Our holding certainly does not apply to purchase options.
We are not deciding the rights of a defaulting purchaser, who does not tender full performance and who is willing to relinquish his rights in the land, to recover all or any part of the purchase money already paid.
No third-party rights of bona fide purchasers for value are at issue before us, and it may be noted that the contract was recorded promptly after execution.
For these reasons the judgment of the trial court is therefore affirmed and this cause is remanded for action consistent with this opinion.
PIERCE, C.J., and McNULTY, J., concur.