United States Court of Appeals,

Eleventh Circuit.

No. 95-4379

Non-Argument Calendar.

In re GENERAL DEVELOPMENT CORPORATION, Debtor.

John E. SIPES;  Mildred B. Sipes, Plaintiffs-Appellants,

v.

ATLANTIC GULF COMMUNITIES CORPORATION;  General Development
Corporation, Defendants-Appellees.

June 7, 1996.

Appeal from the United States District Court for the Southern
District of Florida (No. 94-95 CIV-SMA), Sidney M. Aronovitz,
Judge.

Before TJOFLAT, Chief Judge, and KRAVITCH and HATCHETT, Circuit
Judges.

PER CURIAM:

We affirm on the basis of the opinion of the district court,
dated January 27, 1995, 177 B.R. 1000.  The relevant portions of
the district court's opinion are attached as an appendix.

AFFIRMED.

APPENDIX

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

IN RE:  GENERAL DEVELOPMENT CORPORATION, et al., Debtors.

JOHN E. SIPES AND MILDRED B. SIPES, Appellants,

vs.

GENERAL DEVELOPMENT CORPORATION, n/k/a ATLANTIC GULF COMMUNITIES
CORPORATION, Appellee.

Case No. 94-0095-CIV-ARONOVITZ

BKC No. 90-12231-BKC-AJC

JAN 27 1995

*ORDER ON PENDING MOTIONS AND AFFIRMING THE BANKRUPTCY COURT'S
ORDER GRANTING ATLANTIC GULF'S MOTION TO ENFORCE EXECUTORY
CONTRACT, DISCHARGE AND INJUNCTION PROVISIONS OF PLAN AND
CONFIRMATION ORDER, AND DENYING MOTION FOR EX PARTE RELIEF FROM THE
AUTOMATIC STAY, DATED NOVEMBER 5, 1993*

BEFORE THIS COURT is an appeal from the Bankruptcy Court's Order Granting Atlantic Gulf's Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order, and Denying Motion for Ex Parte Relief from the Automatic Stay, dated November 5, 1993. In addition, currently pending before the Court are three motions: (1) Appellee General Development Corporation's ("GDC") Motion to Strike Appendix A, Appendix B and Appendix C to Appendix to Appellants' Reply Brief, file dated April 4, 1994; (2) Appellee GDC's Motion to Supplement Appellate Record, file dated April 4, 1994; and (3) Appellants' John E. Sipes and Mildred B. Sipes (the "Sipes") Motion to Supplement Appellate Record, file dated April 21, 1994.

This Court heard oral argument on this appeal on October 7, 1994, and has carefully considered all briefs submitted on appeal, oral argument of counsel, the entire record including but not limited to the three pending motions and responses filed thereto, applicable law and is otherwise fully advised in the premises. For the following reasons, it is **ORDERED AND ADJUDGED** that:

1. Appellee GDC's Motion to Strike Appendix A, Appendix B and Appendix C to Appendix to Appellants' Reply Brief be, and the same, is hereby **GRANTED IN PART.** Only Appendix C to Appendix to Appellants' Reply Brief shall be stricken from the appellate record, and Appendix A and B shall be considered part of the

appellate record.

2. Appellee GDC's Motion to Supplement Appellate Record be, and the same, is hereby **GRANTED.**

3. Appellants Sipes' Motion to Supplement Appellate Record be and the same, is hereby **DENIED.**

4. The Bankruptcy Court's Order Granting Atlantic Gulf's Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order, and Denying Motion for Ex Parte Relief from the Automatic Stay, dated November 5, 1993, is hereby **AFFIRMED in its entirety.**

*Factual and Procedural Background*

The Sipes appeal from an Order Granting Atlantic Gulf's Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order, and Denying Motion for Ex Parte Relief From the Automatic Stay, entered by the Honorable A. Jay Cristol, United States Bankruptcy Judge and dated November 5, 1993. By this Order, Judge Cristol ruled, among other things, that an installment land sale contract between the Sipes and Debtor GDC was an executory contract subject to rejection by GDC pursuant to § 365 of the Bankruptcy Code.

The installment land sales contract at issue, entitled the "Homesite Purchase Agreement", was entered into by the Sipes and GDC for the sale of a homesite in Port St. Lucie, Florida (the "Property") on July 15, 1972. The Agreement provided that GDC would deliver to the purchaser a Warranty Deed once the purchaser made all monthly payments. The Sipes completed all of their payments due under the contract in March of 1983. However, due to

alleged construction delays, the homesite remained undeveloped as of December of 1987.

GDC and its affiliates and subsidiaries ultimately filed voluntary Chapter 11 petitions on April 6, 1990. On October 26, 1990, the Bankruptcy Court approved GDC's proposed Homesite Purchaser Assurance Program (the "Program"), which set forth a mechanism to assure purchasers that they will receive their deeds upon payment of a reduced purchase price. Under the Program, purchasers such as the Sipes whose homesites were on land which GDC did not intend to develop were afforded the option to participate in the Program and have their contract transferred to a developed lot. The Sipes declined to participate and as a result, GDC rejected the Sipes' Homesite Purchase Agreement on June 19, 1992. The Sipes filed an objection to the rejection on July 9, 1992.

Meanwhile, on March 27, 1992, GDC's reorganization plan was confirmed. The GDC Plan provided that homesite purchasers whose contracts were rejected would receive a Class 2.2 (secured) claim in respect to their lien rights under § 365(j) of the Code, a Class 10 (unsecured) claim in respect of prepetition principal and interest payments not covered by § 365(j), and an administrative claim for any payments made after filing date. The Confirmation Order provided that "all of the property of the estate, wherever situated, is vested in the Reorganized Company, free and clear of all claims and interests of creditors and of security equity holders, except as provided in the Plan and this Order." It also discharged all prepetition debts and enjoined all persons from recovering on their claim.

On June 20, 1992, GDC sent the Sipes a special proof of claim form, calculating the Sipes' claim to be $5,088.00. The Sipes disagreed and asserted a claim of $5,096.26. In November of 1992, the Sipes filed a state court action against GDC, seeking specific performance and damages. The action was dismissed with prejudice due to GDC's pending bankruptcy.

After learning of GDC's efforts to replat and redevelop the subdivision in which their property is located, the Sipes filed in the bankruptcy court a *pro se* Motion for Ex Parte Relief From the Automatic Stay on September 24, 1993. GDC thereafter filed a motion to enforce the executory contract, discharge and injunction provisions of the Confirmation Order against the Sipes. GDC sought an order (i) declaring that any claim or interest of the Sipes in the Property was terminated by GDC's rejection of the Homesite Purchase Agreement and that the Property vested in Atlantic Gulf free and clear of any interest or claim of the Sipes; (ii) declaring that any prepetition claim of the Sipes was discharged pursuant to the Confirmation Order and § 1141(d) of the Code; and (iii) enjoining the Sipes from seeking to enforce or assert an interest in the Property and from interfering with GDC's use and development thereof.

Following a hearing on the two motions, Judge Cristol denied the Sipes' ex parte motion and granted GDC's enforcement motion. He found that the Agreement was an executory contract subject to rejection under 11 U.S.C. § 356(a) and that the Property was vested in Atlantic Gulf free and clear of any interest of claim of the Sipes. He also enjoined the Sipes from asserting an interest in

the property or otherwise interfering with Atlantic Gulf's use and development of the Property. The Sipes appeal this Order.

As noted herein, also pending before this Court are three motions: (1) Appellee GDC's Motion to Strike Appendix A, Appendix B and Appendix C to Appendix to Appellants' Reply Brief; (2) Appellee GDC's Motion to Supplement Appellate Record; and (3) Appellants Sipes' Motion to Supplement Appellate Record.

In the course of examining the record, the appellate briefs and the outstanding motions in preparation for oral argument on the merits of the appeal, it became apparent that the Bankruptcy Court's Order on appeal was devoid of any factual findings to support its ruling with respect to the Appellants' procedural due process claim. This claim was raised at the trial level in the Response to Reorganized Debtors' Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order, dated October 26, 1993.

In addition, it was apparent that the Bankruptcy Court's Order contained no citations to authority to support its ruling that the Homesite Purchase Agreement at bar was an executory contract subject to rejection pursuant 11 U.S.C. § 365. No citations to legal authority, other than "courts and commentators alike," and no findings of fact were made to support the ruling. Issues of fact therefore remained undetermined. Accordingly, on May 11, 1994, this Court entered an Order *remanding* this case to the United States Bankruptcy Court to (1) hold an evidentiary hearing and make findings of fact and conclusions of law regarding the Appellants' procedural due process claim, and to determine which documents

should be admitted into the record on that issue; and (2) to make findings of fact and further conclusions of law, and to hold an evidentiary hearing if necessary, regarding the issue of whether the Homesite Purchase Agreement at issue was an executory contract for rejection purposes under § 365 of the Bankruptcy Code. On September 16, 1994, the Bankruptcy Court entered its Order on Evidentiary Hearing Pursuant to Remand. ("Order on Remand") This Court has carefully considered said Order on Remand and the arguments presented on appeal, including oral argument of counsel on October 7, 1994.

*Standard of Review*

In accordance with Federal Rule of Bankruptcy Procedure 8013, the Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. *In re Chase & Sanborn Corp.,* 904 F.2d 588 (11th Cir.1990); *In re T & B General Contracting, Inc.,* 833 F.2d 1455 (11th Cir.1987). Equitable determinations by the Bankruptcy Court are subject to review under an abuse of discretion standard. *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883 (11th Cir.1990). Conclusions of law are subject to *de novo* review. *In re Chase & Sanborn Corp.,* 904 F.2d at 593; *In re Sublett,* 895 F.2d 1381 (11th Cir.1990).

While the Bankruptcy Court's factual findings are subject to a clearly erroneous standard, that standard does not apply when determining the propriety of the Bankruptcy Judge's conclusions of law, (i.e.) determination of what law applies or determination of the ultimate legal conclusions resulting from the application of the law to the facts. Legal conclusions made by the Bankruptcy

Judge may not be approved by the District Court without an independent determination. *In re Columbia Data Products, Inc.,* 99 B.R. 682, 684 (D.Md.1989), *affirmed,* 892 F.2d 26 (4th Cir.1989); *citing, In re Hunter Sav. Ass'n.,* 34 B.R. 368, 374 (Bankr.S.D.Ohio 1983), *reversed on other grounds,* 750 F.2d 536 (6th Cir.1984); *In re Hollock,* 1 B.R. 212, 215 (Bankr.M.D.Pa.1979).

*Three Pending Motions*

**1. Appellee GDC's Motion to Strike Appendix A, B and C of Appellants' Appendix to Reply Brief**

When the Sipes filed their reply brief, they also filed a second appendix containing, among other things, GDC's certificate of service regarding the conformation hearing ("Appendix A"), GDC's certificate of service regarding the disclosure statement ("Appendix B"), and an 10/27/93 GDC letter to the Sipes ("Appendix C"). According to the reply brief, these documents were added in support of the Sipes' claim that they were denied procedural due process in connection with the confirmation hearing.

GDC moved to strike these documents on the ground that they were never designated as part of the record on appeal, that they are misleading, and that the Sipes never moved to supplement the record with these documents pursuant to Fed.R.App.P. 10(e). It further contends that the GDC letter (Appendix C) is a privileged settlement offer that should be stricken as an improper disclosure of settlement discussions.

In response, the Sipes contend that the two certificates of service (Appendices A and B) are and were part of the record below and therefore should not be stricken on appeal. These documents

were attached to their reply brief in direct response to new arguments raised by GDC for the first time in GDC's answer brief. As to Appendix C, the letter was not, as GDC maintains, a settlement offer but rather, GDC's proposed final resolution of the Sipes' claim.

## 2. Appellee GDC's Motion to Supplement Appellate Record

In a separate motion, GDC has moved pursuant to Fed.R.App.P. 10(e) to supplement the record on appeal to include John Sipes' Ballot rejecting the GDC Plan ("Exhibit A"); Mildred Sipes' Ballot rejecting the GDC Plan ("Exhibit B"); and GDC's Ballot and Disclosure Statement ("Exhibit C"). These documents are offered to rebut the Sipes' claim that they should not be bound by the GDC Plan or Confirmation Order because they allegedly did not receive notice thereof. The Ballots (Exhibits A and B) advised the Sipes that "The Second Amended Joint Plan of Reorganization ... can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted ..." The Sipes executed the Ballots by rejecting the Plan on November 1, 1991. (The Plan was confirmed in 1992). Exhibit C is a compilation of documents which GDC submits was sent with the ballots. Included in Exhibit C is the notice of the confirmation hearing. GDC argues that the Sipes could not have received the ballots without receiving Exhibit C.

GDC further submits that the Sipes' claim of no notice should not be considered on appeal because it was not raised below, and that it is contrary to the lower court's finding in a December 20, 1991 Memorandum Opinion that proper notice was given to all affected claimants.

In response, the Sipes maintain that the documents at issue should not be placed into the appellate record because they were not part of the record in the trial court.[1]  They also argue that the documents are irrelevant.

**3. Sipes' Motion to Supplement the Record**

The Sipes move to supplement the appellate record to include the transcript of a March 27, 1992 hearing which they maintain shows (1) that the final confirmation hearing occurred on March 27, 1992;  and (2) that GDC's assumptions/rejections of many of the homesite contracts were made *after* the confirmation.

In response, GDC opposes said supplementation on the ground that the transcript is not a document which was considered by the bankruptcy court in its deliberations.  It then argues that the Sipes have mischaracterized the proceedings in the March 27, 1992 hearing.

*Discussion on Three Pending Motions*

All of the contested documents relate to and stem from the Sipes' claim that they are not bound by the GDC Plan and Confirmation Order because they did not receive adequate notice of the confirmation hearing and therefore, were denied procedural due process.  GDC erroneously asserts that the due process argument is being raised for the first time in this case at the appellate level.  The argument was raised at the trial level in the Sipes' response to GDC's Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order.

[1]*See, In re Neshaminy Office Building Ass'n,* 62 B.R. 798 (E.D.Pa.1986).

Moreover, it was included in the Sipes' Statement of Issues to be Presented on Appeal.[2] Appellants' initial brief, however, did not address the claim at all.

Because the Bankruptcy Court's Order on appeal did not address the procedural due process issue, this Court remanded the issue back to the Bankruptcy Court for further findings. On remand, the Bankruptcy Court specifically found that:

> Based upon the documentary and testimonial evidence presented, the Court finds that the Sipes were afforded and received full due process. They received all requisite notice that the law requires be provided to creditors in a Chapter 11 case. Moreover, despite their claims to the contrary, they were provided the opportunity to participate in GDC's Chapter 11 case and object thereto. [footnote omitted] ...
>
> The Court notes that in previous pleadings filed with the district court, the Sipes denied receiving notice of the confirmation hearing as well as the Disclosure Statement and Summary of Plan. Apparently, these documents were subsequently located by the Sipes who stipulated prior to the evidentiary hearing in the Joint Pre-Evidentiary Order entered by the Court on June 14, 1994 that they "did receive copies of the Disclosure Statement for Creditors for Classes 2.3, 3.3, 10, 13, 14, and 16, Accompanying Summary of Second Amended Joint Plan of Reorganization of General Development Corporation, GDC documents Accompanying the Ballot and Disclosure Statement," and that "any prior claims by the Sipes that they did not receive the aforementioned documents prior to the December 1991 confirmation hearings is withdrawn." (Joint Pre-Evidentiary Hearing Order at ¶ 3) <u>Accordingly, this issue is now moot.</u> **(underlining supplied)** *Order on Remand,* pp. 7-9.

A review of the Order on Remand reflects that the contested documents as described above, *with the exception of the 10/27/93 GDC letter to the Sipes ("Appendix C"), and the transcript of a March 27, 1992 hearing,* were considered by the Bankruptcy Court in

---

[2]One of the listed issues to be presented on appeal is "[w]hether GDC's Reorganization Plan is applicable to John and Mildred Sipes."

its determination that the Sipes were afforded and received full due process. Because the 10/27/93 GDC letter to the Sipes ("Appendix C"), and transcript of a March 27, 1992 hearing were not considered by the Bankruptcy Court they shall not be permitted to become part of the appellate record. However, those contested documents as described above, except for the 10/27/93 GDC letter to the Sipes ("Appendix C"), and transcript of a March 27, 1992 hearing, shall be allowed to become part of the appellate record. Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Appellee GDC's Motion to Strike Appendix A, Appendix B and Appendix C to Appendix to Appellants' Reply Brief be, and the same, is hereby **GRANTED IN PART.** Only Appendix C to Appendix to Appellants' Reply Brief shall be stricken from the appellate record, and Appendix A and B shall be considered part of the appellate record.

2. Appellee GDC's Motion to Supplement Appellate Record be, and the same, is hereby **GRANTED.**

3. Appellants Sipes' Motion to Supplement Appellate Record be and the same, is hereby **DENIED.**

*Appellants Sipes' Arguments on Appeal*

The Sipes maintain that the dispositive issue on appeal is whether the Homesite Purchase Agreement is executory in nature. Section 365(a) of the Code provides that the trustee, subject to the court's approval, may assume or reject any executory contract of the debtor. The court below reasoned that the Homesite Purchase Agreement was an executory contract. The Sipes argue that the Agreement was not an executory contract because installment land

sale contracts are only security devices under Florida law.[3]  *See*

*First Federal Savings & Loan Ass'n v. Fox,* 440 So.2d 652 (Fla. 2d

DCA 1983);  *Cain & Bultman, Inc. v. Miss Sam, Inc.,* 409 So.2d 114

(Fla. 5th DCA 1982).  In such situations, the purchaser is

initially vested with equitable title and legal title remains in

the seller only as *security* for the payment of the purchase price.

The Sipes further submit that the legislative history of § 365

indicates that the term "executory contract" refers to a contract

on which performance remains due to some extent on both sides.  *In*

*re Charter Co.,* 52 B.R. 267 (Bankr.M.D.Fla.1985);  *In re Adolphsen,*

38 B.R. 776 (Bankr.D.Minn.1983).  In this case, since they had

fully completed their performance under the contract seven years

prior to GDC's bankruptcy filing, the contract is not executory.

The remedy they seek is specific performance;  to compel GDC to

convey an executed warranty deed for the Property at issue.

The Sipes argue that they are not bound by the GDC Plan

because they were never given notice of the confirmation hearing

and therefore, were denied due process.  *Citing, Reliable Electric*

*Co., Inc. v. Olson Construction Co.,* 726 F.2d 620 (10th Cir.1984).

As evidence of the lack of notice, the Sipes attached to their

Reply Appendix copies of the certificates of service on the

confirmation hearing (Appendix A) and on the Disclosure Statement

---

[3]The Sipes assert that the law of the state where the property is situated governs questions of property rights, even in the context of a bankruptcy proceeding. *See Stellwagen v. Clum,* 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918);  *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979);  *Johnson v. First Nat'l Bank of Montevideo, MN,* 719 F.2d 270 (8th Cir.1983);  *Heartline Farms, Inc. v. Daly,* 128 B.R. 246 (Bankr.D.Neb.1990);  *Shaw v. Dawson,* 48 B.R. 857 (Bankr.D.C.N.M.1985).

(Appendix B).  Neither lists the Sipes as a recipient.[4]

The Sipes claim that they are entitled to specific performance, which is an equitable remedy available when the legal remedies are inadequate.  The legal remedies here are inadequate in that the Sipes were never offered a full refund of their payments but only a fraction thereof, and any alternative property offered to them was considerably less in value than the lot they originally purchased.  In addition, given the unique nature of land, it is well established that money damages to a purchaser of land is inadequate.  *See Henry v. Ecker,* 415 So.2d 137 (Fla. 5th DCA 1982).  The Sipes further rely on *Ocean Dunes of Hutchinson v. Colangelo,* 463 So.2d 437 (Fla. 4th DCA 1985), where the court held that specific performance was proper where the contractual remedies were neither reasonable nor mutual.

The Sipes argue that the United States Supreme Court in *Butner v. United States, supra,* made clear that state law governs questions of property rights in bankruptcy.  Nevertheless, they assert that the contract in question is not an executory contract under either state or federal law.  The controlling definition of an executory contract is found in the legislative history of the Code, which provides that executory contracts are those "on which performance remains due to some extent on both sides."  The Sipes further assert that their equitable lien or interest in the Property was not extinguished by the bankruptcy because the Homesite Purchase Agreement was not an executory contract subject

---

[4]These certificates of service are the subject of GDC's motion to strike discussed *supra.*

to rejection.  Moreover, that the GDC Plan has already been confirmed and substantially consummated is irrelevant.  The Sipes contend that the specific performance relief they seek will not affect the reorganization.

*Appellee GDC's Arguments on Appeal*

In rebuttal, GDC argues that aside from the issue of whether the Homesite Purchase Agreement was or was not an executory contract, the fact remains that any claims or interests the Sipes may have had were extinguished by the GDC Plan and the Confirmation Order.  It is well established that confirmation of a Chapter 11 plan has three effects:  (1) all creditors are bound by the plan; (2) all property vests in the debtor free and clear of all claims and interest of creditors, except as otherwise provided in the plan or confirmation order;  and (3) the debtor is discharged of all prepetition debts.  *In re American Properties, Inc.,* 30 B.R. 239, 246 (Bankr.D.Kan.1983);  *In re Holywell Corp.,*  93 B.R. 780 (S.D.Fla.1988), *affirmed, Miami Center v. Bank of New York,* 881 F.2d 1086 (11th Cir.1989).  Two years after the confirmation of the GDC Plan, the Sipes ask the Court to exonerate them from these well established principles, to ignore the fresh start and rehabilitative purposes of the Bankruptcy Code, to disregard the discharge and injunction provisions of the Confirmation Order, and to modify the GDC Plan as it pertains to the treatment of homesite purchasers for them alone.  The GDC Plan was confirmed, the Sipes did not object to the confirmation nor did they appeal it.  GDC argues that it is now too late for them to claim that they are entitled to different treatment.  *Citing, In re Dore & Associates*

*Contracting, Inc.,* 43 B.R. 717 (Bankr.E.D.Mich.1984); *In re Horne,* 99 B.R. 132 (Bankr.M.D.Ga.1989).

GDC concedes that although state law generally governs questions of property rights in bankruptcy in the absence of any conflict between state law and bankruptcy law, this deferral to state law gives way where there is a specific federal interest governing the relationship between the parties in bankruptcy. Such a federal interest exists here, GDC maintains. As recognized by one court "Congress has expressed an overriding federal interest in certain executory contracts, i.e., collective bargaining agreements and **real property sales contracts when the debtor is the seller** ..." *In re Buchert,* 69 B.R. 816 (Bankr.N.D.Ill.1987), *affirmed,* 1987 WL 16019 (N.D.Ill.1987) **(emphasis added).**

The distinction between a debtor as the seller versus a buyer of real property is fundamental to the determination of whether the sales contract may or may not be deemed executory, GDC asserts. This is because:

> .. non-debtor vendees, by virtue of Sections 365(i) and 365(j), may receive more favorable treatment in bankruptcy than debtor/vendees. And debtor/vendors, because of other policies and provisions in the Code, may fair better than debtor/vendees. It may be argued that this disparity in treatment is warranted because of the risk of default when debtor is vendor, or because the non-debtor ... is an innocent victim.

*In re Booth,* 19 B.R. 53, 63 (Bankr.D.Utah 1982). The court concluded that:

> ... it is the consequences of applying Section 365 to a party, especially in terms of benefits to the estate and the protection of creditors, not the form of contract between vender and vendee, which controls.

*Id.* at 57. Where the debtor is the seller of real estate, the

courts have found the contract to be an executory one. *See, e.g.,* *In re Waldron,* 36 B.R. 633 (Bankr.S.D.Fla.1984), *reversed on other grounds,* 785 F.2d 936 (11th Cir.1986) (option to purchase real estate was executory contract); *In re Hardie,* 100 B.R. 284 (Bankr.E.D.N.C.1989) (debtor/vendor's contract to sell option to purchase property would be permitted to reject option as executory contract); *In re W. & L. Associates, Inc.,* 71 B.R. 962 (E.D.Pa.1987) (debtor/vendor may reject contract to sell notwithstanding that non-debtor/vendee had fully performed under contract). GDC argues that in each of the cases cited by the Sipes, the debtor was the buyer of real property, not the seller.

GDC further adds that its ability to reject the tens of thousands of homesite contracts was critical to its reorganization. Moreover, the non-debtor buyers were protected by the provisions of the Code. Section 365(j) provides that a non-debtor purchaser who is not in possession of the property "has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid." 11 U.S.C. § 365(j).

The Sipes' argument that their Homesite Purchase Agreement was merely a security device under Florida misconstrues the nature of the agreement, GDC submits. Unlike the agreements for deed involved in the cases cited by the Sipes, the Sipes received neither possession nor ownership of the property at the time of entering into the Homesite Purchase Agreement. In addition, Florida courts have recognized that not all installment land sale contracts are security devices. In *H. & L. Land Co. v. Warner,* 258

So.2d 293 (Fla. 2d DCA 1972), the court held that a vendor under an installment land sale contract who gave the purchaser possession of the land and the benefits and burdens of ownership was in no different position than a vendor who conveyed legal title and took back a mortgage. The court also held that its ruling did not apply to a contract "that is not specifically enforceable or to one under which the buyer has no right to possession or other benefits and burdens of ownership." *Id.* at 296.

GDC argues that Sipes' requested relief of specific performance is foreclosed by the language of their Homesite Purchase Agreement. That agreement limited the Sipes' remedies in the event of GDC's default to: (1) a refund of all payments made; or (2) an exchange of the Property for other property of similar value in any of GDC's communities. The Sipes failed to avail themselves of these remedies. Moreover, even if the Sipes had a right of specific performance under the contract, such relief is barred by the applicable one year statute of limitations under Florida law. *See* Fla.Stat. § 95.11(5)(a); *City of Orlando v. Williams,* 493 So.2d 15 (Fla. 5th DCA 1986).

*Discussion on Appeal*

*Bankruptcy Court's Order Granting Atlantic Gulf's Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order, and Denying Motion for Ex Parte Relief from the Automatic Stay, dated November 5, 1993*

Upon careful consideration of the arguments made by the parties and a review of the entire record, including all appellate briefs, as well as the Order on Remand, this Court agrees and adopts the Bankruptcy Court's well reasoned analysis in its Order on Remand. The two dispositive issues in this case are (1) whether

Appellants' were denied procedural due process and (2) whether the Homesite Purchase Agreement at issue is an executory contract subject to rejection under § 365 of the Bankruptcy Code.

*Appellants Were Not Denied Due Process*

On remand, the Bankruptcy Court made the following detailed findings:

> As early as 1980, GDC began sending correspondence to the Sipes advising of problems which prevented GDC from completing development of and deeding the Sipes the specific homesite lot for which they had contracted. This correspondence continued not only through GDC's filing of its Chapter 11 petition but continued throughout GDC's Chapter 11 case. (*See* GDC Exhibit Nos. 2, 3, 4, 5 and 7) ...

> The Sipes were clearly put on notice that the homesite lot identified in their homesite purchase agreement was undeveloped and that they could elect to be transferred to another lot pursuant to HPAP. [Homesite Purchaser Assurance Program] Dispositively, the Florida Public Offering Statement which was mailed to the Sipes, as well as tens of thousands of other homesite purchasers offered HPAP, left no question as to GDC's plans with respect to Port St. Lucie Section 38, the section in which the homesite lot identified in the Sipes' homesite purchase agreement was located ...

> The Sipes were also advised of the consequences of their decision not to accept HPAP ... This notice was consistent with correspondence which the Sipes received from the Special Representative James Paul, [footnote omitted] as well as a letter sent by GDC to the Sipes dated February 6, 1991 in which the Sipes were advised that GDC apologized "for not being able to comply with your request," that GDC immediately deliver a warranty deed and title insurance policy to the Sipes in connection with the homesite lot covered by their homesite purchase agreement. (*See* Exhibit Nos. 6 and 7) ...

> In October, 1991, in connection with confirmation of GDC's proposed plan of reorganization, the Sipes also received (i) a Disclosure Statement for Creditors of Classes 2.2, 3.3, 10, 13, 14 and 16 Accompanying Summary of Second Amended Joint Plan of Reorganization of General Development Corporation, (ii) Documents Accompanying the Ballot and Disclosure Statement, and (iii) Ballots for Accepting or Rejecting the Second Amended Joint Plan of Reorganization. (GDC Exhibit Nos. 16, 17, 18 and 19) Indeed, not only did the Sipes receive these documents, but as testified to by Mr. Sipes, evidently took the time and effort to scrutinize the same in great detail, highlighting and underlining sections which Mr.

Sipes testified he believed relevant.  The Sipes thereupon executed and returned ballots rejecting GDC's Second Amended Joint Plan of Reorganization (the "GDC Plan").  (GDC Exhibit Nos. 18 and 19)

The confirmation hearing on the GDC Plan, of which the Sipes received notice in the Documents Accompanying the Ballot and Disclosure Statement, was held in December, 1991 ...  After confirmation of the GDC Plan and entry of the Court's Order Confirming Second Amended Joint Plan of Reorganization of General Development Corporation, dated March 27, 1992 (the "Confirmation Order"), the Sipes were notified of GDC's rejection of their homesite purchase agreement and provided with a special proof of claim form in which they could assert a claim arising from rejection of their homesite purchase agreement.  The Sipes duly noted their objection to the amount that GDC claimed was due and owing ($5,088.00) and returned this special proof of claim form to the court setting forth and reiterating their previously filed claim for $5,096.26 (GDC Exhibit No. 24).  With respect to GDC's notice advising the Sipes of the rejection of their homesite purchase agreement, the Sipes did file a response objecting thereto. (GDC Exhibit No. 25)  *Order on Remand,* pp. 3-6.

As previously noted herein, the Bankruptcy Court further found:

**Based upon the documentary and testimonial evidence presented, the Court finds that the Sipes were afforded and received full due process.  They received all requisite notice that the law requires be provided to creditors in a Chapter 11 case. Moreover, despite their claims to the contrary, they were provided the opportunity to participate in GDC's Chapter 11 case and object thereto.  (emphasis added)**[footnote omitted]. *Order on Remand,* pp. 7-8.

The Bankruptcy Court goes on to state:

The Court has considered the Sipes' claim that they did not receive the full GDC Plan, but rather a summary of the same. The Court does not find this argument convincing as the Sipes were advised that the full and complete GDC Plan was on file for review or could be obtained upon request.  That the Sipes took the time to review the documents which they did receive and voted to reject the GDC Plan is indicative that the Sipes had sufficient information with respect to the treatment of their claim to make an informed decision as to whether to vote to accept or reject the GDC Plan.

Finally, the fact that the Sipes did not file an objection to the Disclosure Statement or contest confirmation based upon their claimed mistaken belief that they were not affected by the GDC Plan or the bankruptcy as a whole does not lend any support to an argument that the Sipes were denied due process.

The Sipes were provided with all of the information and documentation which creditors similarly situated could have expected and were required to expect in a case of this size ... **There is simply no evidence from the record presented to this Court or of which the Court is independently aware that the Sipes were denied due process.** (emphasis added) *Order on Remand,* pp. 9-10.

Upon review of these specific findings and the arguments presented, Appellants have not demonstrated to this Court that the Bankruptcy Court clearly erred in its findings and conclusion on remand that the Sipes were not denied due process. Moreover, this Court agrees with the Bankruptcy Court that the Sipes were provided with all of the information and documentation which creditors similarly situated could have expected and were required to expect in a case of this size. This Court adopts and affirms the Bankruptcy Court's findings and conclusion that the Sipes were not denied due process.

*The Homesite Purchase Agreement is an Executory Contract Subject to Rejection Under § 365 of the Bankruptcy Code*

The Bankruptcy Court's analysis on remand as to this issue is well reasoned and worthy of restating in relevant part. Specifically, the Bankruptcy Court states on remand:

Section 365(a) of the Bankruptcy Code, as made applicable to a debtor-in-possession by Section 1107(a) of the Bankruptcy Code, permits a debtor to "assume or reject any executory contract or unexpired lease of the debtor." The power of a debtor to reject a contract as part of its reorganization efforts is consistent with the fresh start and rehabilitative purposes of the Bankruptcy Code. [citations omitted]

The Sipes argue that their homesite purchase agreement was not an executory contract because they had fulfilled all performance obligations under such agreement by completing payments of principal and interest in March, 1983. They urge this Court to apply the definition of "executory" contract as articulated by Professor Vern Countryman in a law review article published in the Minnesota Law Review in 1963, which definition requires unperformed mutual obligations on both

sides. Countryman, *Executory Contracts and Bankruptcy,* Part 1, 57 Minn.L.Rev. 439 (1963).

However, this court as well as other courts and commentators have consistently expanded the definition of "executoriness" beyond the static definition articulated by Professor Countryman and beyond that urged by the Sipes. [citations omitted] While counsel for the Sipes argued that the legislative history of Section 365 reflects that Congress intended an executory contract to be one in which there remained mutual obligations due and owing from the parties, this Court must respectfully disagree. As this Court stated in *Arrow Air,*

> The legislative history of § 365 and the statute itself, establish that it is not always the case that there must be outstanding obligation on the part of both parties to a contract in order for a contract to be deemed executory ... The express language of § 365 reflects that congress did not adopt a specific definition of an "executory contract" which would require mutual obligations, in spite of its clear opportunity to do so. Legislative history for that section evidences that congress considered mutual obligation to be indicative of an executory contract in some [sit], but not all, cases ... **Even though there may be material obligations outstanding on the part of only one of the parties to the contract, it may nevertheless be deemed executory under the functional approach if its assumptional rejection would ultimately benefit the estate and its creditors. (emphasis added)** *In re Arrow Air, Inc.,* 60 B.R. 117, 12-22 (Bankr.S.D.Fla.1986) ...

> In the instant case, GDC's ability to reject homesite purchase agreements which obligated it to improve and deed developed homesite lots to tens of thousands of lot purchasers, when it was simply financially unable to fill such contractual obligations, was critical to GDC's reorganization. The very purpose of rejection, as even recognized by Professor Countryman, was thus served in the instant case by GDC's ability to reject such homesite purchase agreements ...

> While the concept of executoriness will no doubt engender additional debate in the future, this court finds no support in the Code itself or the legislative history of section 365 to apply as rigid a definition of "executory" contract as Sipes would urge this Court to apply. It is clear that the Sipes' homesite purchase agreement represented an unperformed contract. Whether the Sipes were required to undertake any further actions after completing payments of principal and interest under their agreement is not determinative of whether the purposes of

rejection and reorganization would be served by defining such homesite purchase agreement as an executory contract. [footnote omitted] In the instant case, it is undisputed that at least GDC, as seller, had unfulfilled obligations under the terms of the homesite purchase agreement as of its Chapter 11 filing. Rejection permitted GDC to avoid obligations which it was financially unable to meet and which would have prevented a meaningful reorganization for the benefit of hundreds of thousands of creditors who might not have otherwise received any recovery in respect of their claims. [footnote omitted] <u>Accordingly, the Court finds that the Sipes' homesite purchase agreement was an executory contract subject to rejection pursuant to section 365 of the Bankruptcy Code.</u> **(underlining supplied)** *Order on Remand,* pp. 11-16.

This Court has reviewed *de novo* the Bankruptcy Court's conclusion that Sipes' Homesite Purchase Agreement was an executory contract subject to rejection pursuant to section 365 of the Bankruptcy Code. The Court agrees with the application by the Bankruptcy Court of the "functional approach" in this case. Under this approach, the question of whether a contract is executory is determined by the benefits that assumption or rejection would produce for the estate. *See In re G-N Partners,* 48 B.R. 462 (Bankr.Minn.1985); *In re Norquist,* 43 B.R. 224 (Bankr.Wash.1984); *In re Booth,* 19 B.R. 53 (Bankr.D.Utah 1982). GDC's ability to reject contracts which obligated it to improve and deed developed homesite lots was critical to its reorganization since it did not have the financial ability to fulfill such contractual obligations.

While it does not appear that the Eleventh Circuit has adopted the "functional approach" over the "Countryman approach", the Eleventh Circuit in *In re Martin Brothers Toolmakers, Inc.,* 796 F.2d 1435 (11th Cir.1986) appears more inclined to embrace the "functional approach." In *In re Martin Brothers Toolmakers, Inc.,*

the Eleventh Circuit stated **in dicta:**

> It is true that a real estate lease, as well as an installment
> sales contract, may be the functional equivalent of a secured
> financing transaction. [citations omitted] The determination
> in bankruptcy, however, of whether a particular agreement is
> in fact a lease or a security agreement for purposes of § 365
> often depends on which characterization will best serve the
> interests of the estate.  Section 365 enables the bankruptcy
> trustee to affirm or reject leases and executory contracts,
> and is based on the trustee's long-standing power to abandon
> obligations burdensome to the estate.

APPENDIX—Continued

*Id.* at 1439.  Citing to the Sixth Circuit, the Eleventh Circuit

continued:

> The key, it seems, to deciphering the meaning of [§ 365's
> lease-executory contract provision] is to work backward,
> proceeding from an examination of the purposes rejection is
> expected to accomplish.  If those objectives have already been
> accomplished, or if they can't be accomplished through
> rejection, the [agreement] is not [a lease or executory
> contract] within the meaning of the Bankruptcy Act.

*Id.* (citing *In re Becknell & Crace Coal Co., Inc.,* 761 F.2d 319,

322 (6th Cir.1985)).  Since it appears the Eleventh Circuit is more

amenable toward the functional approach, the Bankruptcy Court

properly applied said approach to the case at bar.  Moreover, this

Court agrees with the Bankruptcy Court's conclusion that the

Homesite Purchase Agreement did not constitute a security device

under Florida law where the Sipes neither had possession nor

incurred the benefits and burdens of ownership at any time since

their execution of said Agreement in July, 1972.  Rather, the

Bankruptcy Court properly found that:

> It is clear from the facts presented to this Court that their
> homesite purchase agreement was indeed a contract to convey
> real property which GDC, as a debtor/seller, was entitled to
> reject as an executory contract pursuant to Section 365(a) of
> the Bankruptcy Code. *Order on Remand,* p. 19.

Appellants, therefore, have not demonstrated that the Bankruptcy Court erred as matter of law in concluding that Sipes' Homesite Purchase Agreement was an executory contract subject to rejection pursuant to section 365 of the Bankruptcy Code. Likewise, Appellants have not shown that the Bankruptcy Court erred in its Order Granting Atlantic Gulf's Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order, and Denying Motion for Ex Parte Relief from the Automatic Stay. To the contrary, the Bankruptcy Court's legal determinations are well reasoned and supported by law. Accordingly, this Court affirms and ratifies the Bankruptcy Court's (1) Order Granting Atlantic Gulf's Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order, and Denying Motion for Ex Parte Relief from the Automatic Stay, dated November 5, 1993, and its (2) Order on Evidentiary Hearing Pursuant to Remand, dated September 16, 1994.

In summary and for the reasons set forth herein, it is **ORDERED AND ADJUDGED** that:

\* \* \*

1. Appellee GDC's Motion to Strike Appendix A, Appendix B and Appendix C to Appendix to Appellants' Reply Brief be, and the same, is hereby **GRANTED IN PART.** Only Appendix C to Appendix to Appellants' Reply Brief shall be stricken from the appellate record, and Appendix A and B shall be considered part of the appellate record.

2. Appellee GDC's Motion to Supplement Appellate Record be, and the same, is hereby **GRANTED.**

3. Appellants Sipes' Motion to Supplement Appellate Record be and the same, is hereby **DENIED.**

4. The Bankruptcy Court's Order Granting Atlantic Gulf's Motion to Enforce Executory Contract, Discharge and Injunction Provisions of Plan and Confirmation Order, and Denying Motion for Ex Parte Relief from the Automatic Stay, dated November 5, 1993, is hereby **AFFIRMED in its entirety.**

DONE AND ORDERED in Chambers at Miami, Florida, this 27 day of January, 1995.