**In re Khitam Q. ELKOWNI, Debtor.**

**No. 6:04–BK–00122–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 16, 2004.

Jonathan B. Alper, Esquire, Heathrow, FL, for Debtor.

Theodore D. Estes, Esquire, Orlando, FL, for Pulte Home Corporation.

### ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came on Debtor's Objection to Claim No. 9 of Pulte Home Corporation (Doc. 59) and Response to Objection to Claim No. 9 of Pulte Home Corporation (Doc. 60). The following Findings of Fact and Conclusions of Law are made after reviewing the evidence.

### FINDINGS OF FACT

Pulte Home Corporation ("Pulte") sold an unimproved real property ("Lot") to

Debtor on March 29, 2001 for $665,000. Bank First has a mortgage on the Lot in the principal amount of $557,935.11. Pulte reserved an option to repurchase the Lot in the event Debtor did not begin construction on the lot within twelve months. Pulte and Debtor entered into an Agreement of Sale and Purchase ("Agreement") and a Memorandum of Agreement and Option to Repurchase ("Option") with respect to the Lot. The Option was recorded in the public records of Orange County, Florida on June 11, 2001.

The Option contract in Paragraph 22 of the Agreement provides that if Debtor does not begin construction upon the Lot within 12 months Pulte has the option to repurchase the Lot for 85% of the Purchase Price, or $565,250.00. The purpose of the Option was to protect Pulte from damages to its subdivision. The express intent of the Option is provided in the Agreement:

"Seller and Buyer hereby acknowledge that Seller will be damaged (emphasis added) in the event construction is not diligently pursued and completed on the Lot within the time periods set forth herein. Buyer agrees that in the event that such construction shall not have commenced on the Lot prior to the expiration of the Planning Period provided in Paragraph 21 of this Agreement and thereafter diligently pursued to completion, Seller shall have and is hereby granted the exclusive right and option ... to repurchase the Lot for a sum equal to eighty-five percent (85%) of the Purchase Price ..."

Paragraph 22 also provides if Pulte exercises its repurchase option the [Debtor] will pay all closing costs and satisfy all outstanding mortgages and liens. Paragraph 3 of the Option provides:

[Debtor] and [Pulte] agree *to the extent* that any of the aforesaid surviving provisions of the Agreement obligate [Debtor] for the payment of monies there under to [Pulte], until fully satisfied, such obligation shall be and constitute a lien and encumbrance upon the Lot. (emphasis added)

Paragraph 3 indicates "to the extent" Debtor is obligated to pay Pulte any money under the Agreement that obligation is secured by a lien on the Lot.

Construction did not begin on the Lot within the twelve month time period. Pulte gave Debtor written notice of its Option on September 26, 2003 for a closing to occur on October 23, 2003. The closing did not take place. Pulte filed a Complaint for Specific Performance of the Repurchase Option and, at the same time, recorded a Lis Pendens on the property on December 3, 2003.

The Option required Debtor to execute a deed in consideration of payment from Pulte. Debtor did not execute a deed; payment was not transferred by Pulte. Neither the Debtor nor Pulte fulfilled its performance under the Option. The Option was an executory contract.

Debtor filed a Chapter 13 petition on January 7, 2004 and his Second Amended Plan rejects the Option, as an executory contract. This Court authorized the sale of the Lot on June 2, 2004 ("Sale Order") with Pulte's interest in the Lot transferred to the proceeds of the sale (Doc.54). The Lot was sold for $1,120,000. The mortgage to Bank First was satisfied with net proceeds of $458, 234.63 being held in the Trust Account of Divine & Estes, P.A. Pulte filed a secured claim for damages (Claim No. 9). Debtor filed an objection to Pulte's claim (Doc. 59). The Plan will be confirmed and an order entered contemporaneously (Doc. 113).

Evidence of actual damages has not been established. Pulte did not suffer a

decrease in property values based on Buyer's failure to build within the contractual time periods.[1]

## CONCLUSIONS OF LAW

■ A secured claim is a claim for money owed which has been secured by debtor's express granting of a security interest in the property. An equitable lien [on real property] arises only when the intention to offer the land as security for a debt is clearly apparent.[2]

■ The Option granted Pulte a security interest in the Lot *only to the extent* Debtor owed Pulte money under the Agreement. Debtor was obligated under the Agreement to pay related costs (i.e. closing costs, outstanding liens, attorneys fees) if Pulte repurchased the Lot. Pulte had a security interest for expenses incurred for the repurchase of the Lot. The closing did not take place. Pulte did not repurchase the Lot or incur any related costs. The security interest that Pulte was granted did not mature into a secured claim.

■ The Option contract is an executory contract. An executory contract is any contract where both parties have unperformed obligations that would constitute a material breach if not performed.[3] Option contracts linking debtors to the role of sellers of real estate are executory.[4]

A land sale contract is executory when the Debtor has not yet conveyed or been ordered to convey title.[5] An option to purchase real estate, given to a prospective purchaser pre-petition, is an executory contract which the debtor may reject pursuant to § 365.[6] The debtor has the continuing obligation to forebear from revoking the offer to sell and the prospective purchaser has the unperformed obligation of tendering payment.[7]

■■ Debtor's Second Amended Plan seeks to reject the Option as an executory contract. A debtor may assume or reject the duties of an executory contract pursuant to 11 U.S.C. § 365(a). Debtor is permitted to reject contracts pursuant to § 365 where further performance by the debtor will not benefit the estate.[8] Rejection of an executory contract pursuant to § 365 is permitted to serve a useful purpose of the debtor.[9] Debtor did not file Chapter 13 for the sole purpose of rejecting the Option.

■ A debtor is not obligated for further performance after rejecting an executory contract, but instead breaches the contract.[10] A debtor can escape the burden of an unprofitable contract by agreeing to pay specified rejection damages.[11] The rejection damages, if any, are assessed as a prepetition, unsecured claim for contract damages.

1. See transcript of August 18, 2004 hearing; page 17.

2. *Hansen v. Five Points Guaranty Bank*, 362 So.2d 962, 964 (Fla.App., 1978)

3. *In re Gencor Industries, Inc.*, 298 B.R. 902 at 909.

4. *In re General Development Corp.*, 177 B.R. 1000, 1009 (S.D.Fla.1995) (internal citations omitted); *see In re Waldron*, 785 F.2d 936.

5. *In re Hardie*, 100 B.R. 284, 286 (Bkrtcy. E.D.N.C.,1989).

6. *Id.*

7. *Id.*

8. *In re Gencor Industries, Inc.*, 298 B.R. 902, 909 (Bkrtcy.M.D.Fla.2003).

9. *In re Waldron*, 785 F.2d 936, 940 (11th Cir.1986).

10. *Id.*

11. *Id.*

Debtor's rejection of the Option pursuant to 11 U.S.C. § 502 authorizes a claim for damages, if any, incurred on or before rejection. The guiding principles of damages is "just compensation."[12] The purpose is to put the damaged party in as good of a position as it would have been upon full performance.[13]

Pulte did not experience any damages due to Debtor's breach. The original contract price for the Lot was $665,000. The Lot was sold subsequent to the Debtor's breach for $1,120,000. The significantly appreciated resale price conflicts with a claim for damages, without evidence to the contrary. An award of the appreciated equity to Pulte would be an inequitable windfall to the detriment of the creditors.

Pulte did not establish actual damages based on Debtor's failure to build timely. Therefore, it is

**ORDERED, ADJUDGED AND DECREED** that Debtor's Objection to Claim No. 9 of Pulte Home Corporation (Doc. 59) is **SUSTAINED**; it is further

**ORDERED, ADJUDGED AND DECREED** that the claim of Pulte Home Corporation (Claim No. 9) is **DISALLOWED**; it is further

**ORDERED, ADJUDGED AND DECREED** that Divine & Estes, P.A. remit proceeds from the sale of Lot to Trustee; it is further

**ORDERED, ADJUDGED AND DECREED** that the effective date of this order is stayed for 14 days to provide the parties an opportunity to petition the District Court for a stay pending the appeal.

---

12. *Grossman Holdings Ltd. v. Hourihan,* 414 So.2d 1037, 1039 (Fla.1982).

